747 P.2d 1176

STATE of Arizona, Appellee,

v.

Herman CROWDER, Jr., Appellant.

No. CR–86–0380–AP.

Supreme Court of Arizona,
En Banc.

Dec. 4, 1987.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Vicki Gotkin Adler, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee (former), Dean W. Trebesch (current), Maricopa County Public Defender by Spencer D. Heffel, Deputy Public Defender, Phoenix, for appellant.

FELDMAN, Vice Chief Justice.

Herman Crowder, Jr. pleaded guilty to the crimes of first degree murder, armed robbery, and first degree burglary. The plea agreement form he signed contained a printed provision regarding restitution. Pursuant to the plea agreement, the trial court sentenced Crowder to consecutive terms of life imprisonment on the murder count and twenty-one years on each of the other counts. In addition, the court ordered him to pay restitution in the amount of $37,000. He now seeks to withdraw from his plea agreement on the ground that it was not voluntarily made because he was unaware of the amount of restitution he might be ordered to pay. He appeals directly to this court pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. § 13–4031 (Supp.1986).

## I. FACTS

The victims, a Mesa couple, returned home on the evening of February 24, 1985 to find a burglary in progress. Before the intruder left the home, he shot and killed one of the victims with a .22–caliber handgun and sexually assaulted and beat the other. He took approximately $200 in cash, plus jewelry and credit cards.

Subsequently identified as the assailant, Crowder was arrested and charged with first degree murder, aggravated assault, armed robbery, first degree burglary, and sexual assault. On June 24, 1986, a plea agreement was reached, permitting Crowder to plead guilty to first degree murder, armed robbery, and first degree burglary in consideration for the state's promise not to seek the death penalty. The counts for aggravated assault and sexual assault were to be dismissed, and there was no agreement on the sentences for the remaining counts. The form agreement Crowder signed stated that a fine could be imposed and that "[r]estitution of economic loss to the victim ... will be required."

At the change of plea proceedings the same day, the trial judge explored the voluntariness of Crowder's plea. He fully questioned defendant about his understanding of the range of sentences for each of the counts to which he was about to plead guilty, and discussed the imposition of a fine as high as $150,000, with a thirty-seven percent surcharge per count. Regarding restitution, however, the court asked only:

And do you further understand that the law—the Court can require that you make restitution for any economic loss your victim may have suffered?[1]

Reporter's Transcript, June 24, 1986, at 5. Crowder indicated his assent, and the court accepted his guilty pleas.

The presentence report that followed calculated the surviving victim's economic loss at "approximately $37,000." Indeed, the computation was approximate. *See* Photostated Instruments of ord on Appeal, at 100(i). At the sentencing hearing on December 4, 1986, the court sentenced Crowder on the murder count to life imprisonment without possibility of parole for twenty-five years. On both the armed robbery and burglary counts, the court sentenced him to terms of twenty-one years, each to run consecutively to the life term and to each other. In addition, the court ordered him to pay restitution in the amount of $37,000 pursuant to A.R.S. § 13–603(C) (Supp.1986). This appeal followed.

## II. DISCUSSION

### A. *Issues and Procedure*

■ Crowder maintains that his guilty plea was not intelligently made because he was not advised how much restitution he would have to pay. He relies on *State v.*

---

1. No formal procedures exist for ascertaining the required amount of restitution in advance of the change of plea. The amount of restitution in this case—and evidently in most others—was computed from information contained in the presentence report. However, Rule 26.4(a), Ariz.R.Crim.P., 17 A.R.S., forbids the preparation of such reports prior to the time a guilty plea is entered.

*Phillips,* 152 Ariz. 533, 733 P.2d 1116 (1987), which this court decided on February 26, 1987. Because Crowder's appeal was pending on that date, his invocation of *Phillips* is not erroneous.[2] *See State v. LeMaster,* 137 Ariz. 159, 669 P.2d 592 (App. 1983).

We note that Crowder has not followed proper procedure. He now seeks to withdraw his plea of guilty and have the judgment of guilt vacated, all on the basis of unconstitutionality and the change in law wrought by *Phillips.* The proper procedure would have been to submit the matter to the trial judge by petition for post-conviction relief. *See* Rule 32.1(a) and (g), Ariz.R.Crim.P., 17 A.R.S. Rather than follow that procedure, Crowder simply raised the validity of the plea agreement in his appeal brief. Ordinarily we would not take cognizance of an issue raised for the first time on appeal and would leave defendant to make the proper motion before the trial court. We recognize, however, that the instant appeal was pending when *Phillips* was decided. It is obvious that if the matter were resubmitted to the trial judge, *Phillips* would require that defendant's motion be granted, leaving the state to appeal. Because *Phillips* requires clarification, and in this case the issue is one that only this court can decide, in the interests of judicial economy we turn to the merits of the case.

### B. *Was Defendant's Plea Knowing?*

In *Phillips,* the defendant pleaded guilty to the offense of leaving the scene of an accident involving personal injury. Like Crowder, he had entered into a plea agreement requiring restitution of economic loss to the victim. Whereas Crowder's written plea agreement was silent on the amount, Phillips's stated, "amount of $ to be determined." 152 Ariz. at 534, 733 P.2d at 1117. Like Crowder, Phillips was advised at the change of plea proceedings that the court would order restitution, but he was not told the amount. Not until his sentencing hear-

ing did Phillips, like Crowder, learn the precise amount of restitution he was to pay.

Vacating the judgment and sentence, this court held in *Phillips* that

a defendant [cannot] "thoroughly understand" the consequences of his *agreement to make restitution if he is unaware of the restitutionary amount* that can be imposed. Knowledge that restitution can be ordered for the victim's "full economic loss" is insufficient.

... [W]e will conclude that appellant thoroughly understood the *consequences of his agreement to pay restitution* only if the record contains at least one of the following: (1) a statement in the plea agreement setting forth a specific dollar amount of restitution; (2) a statement by the defendant indicating agreement to pay a specific dollar amount of restitution; or (3) a warning by the trial judge prior to accepting the defendant's plea that he can order restitution of a specific dollar amount.

*Id.* at 535, 733 P.2d at 1118 (emphasis added). This defendant's record, like Phillips's, contains no indication of a "thorough understanding" of the amount of restitution and thus compels the conclusion that defendant's "agreement to make restitution" was involuntary because unknowingly made.

Of course, the word "record" is not limited to the formal record of the change of plea proceedings. When the defendant claims his plea was unknowing and therefore involuntary, the question is not simply what the defendant was told in court but what he knew from any source. Thus, for example, if defense counsel had learned from any source that the economic loss was in the range of $30,000 to $40,000 and had somehow informed defendant that restitution would be required in such an amount, the change of plea would have been knowing even though the same information was not imparted by the trial judge at the formal proceedings. *State v. Levario,* 118

---

2. In contrast, a subsequent change in the substantive law unrelated to plea agreements per se does not affect the validity of plea agreements made prior to the change. *See State v. Nunez,* 109 Ariz. 408, 510 P.2d 380 (1973).

Ariz. 426, 577 P.2d 712 (1978) (extended record must be examined with regard to defendant's knowledge of special sentencing conditions); *State v. Ellis*, 117 Ariz. 329, 572 P.2d 791 (1977) (dealing with nature of charge and range of possible sentence). Similarly, where defendant pleads to a crime which has statutorily prescribed monetary parameters, defendant would necessarily have reason to expect the amount of restitution to be within those parameters. *See, e.g.,* A.R.S. § 13–1802(C); *cf. State v. Lukens*, 151 Ariz. 502, 729 P.2d 306 (1986).

Because of the procedural posture of this case, there has been no inquiry into the extended record. However, the state maintains that defendant had adequate knowledge of his potential monetary liability because in both the plea agreement and the change of plea proceedings the maximum fine of $150,000, plus thirty-seven percent surcharge per count, was expressly set forth. We rejected such a suggestion in *Lukens, supra.* In this pre-*Phillips* case, we held that "a defendant cannot be required to pay restitution in an amount exceeding statutorily-prescribed monetary parameters of the crime to which he pleads guilty unless he voluntarily and intelligently agrees to pay a higher amount." *Id.* at 505, 729 P.2d at 309. We vacated the judgment and sentence that included restitution of $9,132.65 despite the fact that Lukens was fully informed of the possibility of a fine as high as $150,000 plus thirty-seven percent surcharge. *Id.* at 503, 729 P.2d at 307.

On this record, therefore, under *Lukens* and *Phillips*, defendant's *agreement to pay restitution* was not voluntary because he had no prior knowledge of the amount. The issue we face, then, is not whether the restitution agreement was voluntary, but whether Crowder's lack of knowledge of the amount of restitution rendered the *entire* plea agreement involuntary.

C. *Voluntariness of Plea Agreement as a Whole*

This case presents questions somewhat different from *Lukens* and *Phillips*. The

issue in those cases was whether not knowing the amount of restitution they would have to pay made defendants' plea agreements involuntary. We held that it did, but *Lukens* and *Phillips* presented fairly extraordinary circumstances. Lukens, who had benefitted no more than $100 from her crime and who was quite likely to be placed on probation, found herself confronting a restitution figure thirty-six times the limit of the crime to which she had pleaded guilty. Phillips was required to pay a substantial amount of restitution for damages not caused by the crime with which he was charged and to which he had pleaded guilty.

The law requires that a plea be made voluntarily, *i.e.,* "with sufficient awareness of the *relevant* circumstances and *likely* consequences." *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970) (emphasis added). Even if one were to assume that the problem was not one of constitutional proportions, our rules nevertheless require that a plea be accepted "only if voluntarily and intelligently made." Rule 17.1(b), Ariz.R. Crim.P., 17 A.R.S. A defendant is to be informed of "any special conditions regarding sentence...." Rule 17.2(b). One can say with relative equanimity that the amount of restitution in *Lukens* and *Phillips* was a relevant circumstance to the decision of the respective defendants to waive jury trial and enter a plea. While we do not confine *Phillips* and *Lukens* to their facts, we believe that only in such unusual cases is the precise amount of restitution relevant to the decision to enter a plea. Clearly, *Lukens* and *Phillips* do not stand for the proposition that every plea is to be vacated if the defendant lacked any bit of information.

In stark contrast to Lukens and Phillips, this defendant was in dire jeopardy of a capital sentence. A review of the presentence report indicates aggravating circumstances. Surprised by the elderly homeowners while committing a burglary, defendant bound and gagged them, assaulted them, shot the husband four times, beat the wife until she was unconscious, raped her, and evidently left her for dead. Not

only was the shooting of the husband unnecessary, unprovoked, and senseless, but defendant showed, at best, complete disregard of whether the wife would live or die. Aggravating circumstances exist—pecuniary gain and, arguably, cruel, heinous, and depraved conduct. *See* A.R.S. § 13–703(F); *State v. Clark*, 126 Ariz. 428, 436, 616 P.2d 888, 896, *cert. denied*, 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980); *State v. Correll*, 148 Ariz. 468, 479–81, 715 P.2d 721, 732–34 (1986).

Further, the facts contained in the presentence report, if true, leave little doubt that defendant would have been convicted. He went home from the killing with blood on his clothes, carrying the victims' credit cards, which he used to purchase clothing and other items. His live-in girlfriend turned him in after she read of the killing in the newspapers. Defendant gave a detailed confession to the police.

Thus, this defendant and his counsel should have expected conviction and likely imposition of the death penalty. If death were not imposed, the best that could be hoped for on the first degree murder charge was imprisonment for life without possibility of parole for twenty-five calendar years (*see* A.R.S. § 13–703(A)) and likely consecutive aggravated sentences for the sexual assault and other charges. Given this evaluation of the case, one must conclude that defendant could not refuse any reasonable plea bargain. The deal he made enabled him to avoid the death penalty and resulted, also, in dismissal of the assault charges.

Seen in this context, the question of restitution for financial loss seems quite inconsequential to the decision-making process. Nevertheless, because A.R.S. § 13–603(C) requires that restitution be ordered, provision was made for it in the plea agreement, as defendant was well aware. The only thing he did not know, because it had not yet been computed, was the amount of restitution he would have to pay for funeral bills, medical bills, and loss of property. Given the possible fate that awaited defendant, and the advantageous plea offered, it seems very unlikely that the precise amount of restitution would have been a relevant consideration on defendant's side of the equation.

Where the defendant has received the full benefit of the plea bargain, the court will not allow him to vacate the agreement. *See, e.g., Brady*, 397 U.S. at 757, 90 S.Ct. at 1473 (subsequent substantive changes in the law which, in hindsight, show the plea bargain to have been unwise); *State v. Nunez*, 109 Ariz. 408, 510 P.2d 380 (1973); *People v. Watson*, 129 Cal.App.3d 5, 180 Cal.Rptr. 759 (1982). More to the point of this case, a defendant should not be allowed to vacate a plea bargain unless the information he lacked was actually relevant to the decisionmaking process. *United States v. Runck*, 817 F.2d 470 (8th Cir.1987). Where the missing information does not go to defendant's essential objective in making the agreement, where it involves secondary or minor terms collateral to the decision to plead, and where it is not "of the essence" of the agreement, it is in the public interest that the agreement be enforced. *See State v. Rivest*, 106 Wis.2d 406, 428–31, 435–36, 316 N.W.2d 395, 406–07, 409 (1982) (Abrahamson, J., dissenting) (arguing that the defendant's breach of a nonmaterial covenant in a plea bargain should not entitle the state to rescind the arrangement).

In the present case, the formal record establishes that defendant was fully aware of the essential and relevant terms of the plea agreement and of its material consequences to him, including the fact that he would have to make restitution in some amount and might be fined over $200,000. *See Runck, supra*. Defendant nevertheless made an arrangement that appears to have been entirely advantageous to him. Thus, from the record before us it is quite clear that the precise amount of restitution was irrelevant.

Of course, the record before us is very sketchy. We have made assumptions from statements in the presentence report. We have also assumed that the amount of restitution would have been subjectively irrelevant to a 45–year–old man who could not expect release from prison for thirty to

forty years at the earliest and who appears from the presentence report to have been without the funds to ever pay any part of the ordered amount of restitution. However, we should not make any final decision in this case when we have nothing in the way of original evidence.

### III.  CONCLUSION

Thus, the case is remanded to the trial court for an evidentiary hearing. At that hearing, the trial court should apply the legal principles stated in this opinion to determine whether the extended record shows defendant had knowledge of the amount of restitution. If not, the court must then determine whether such lack of knowledge was relevant and material to the making of the plea agreement. If the court finds from all the evidence that the approximate amount of restitution was unknown to defendant and was a relevant and material factor in defendant's decision to plead, then the trial court should apply *Lukens* and *Phillips* and vacate the entire plea. In that case, the state, of course, will be under no obligation to offer defendant the same or any plea bargain. If the court finds, to the contrary, that the amount of restitution was not a relevant and material factor, then *Lukens* and *Phillips* are applicable only to the restitution provision. Defendant agreed to pay restitution, but never validly agreed to the amount of $37,000. Restitution is mandatory under A.R.S. § 13–603(C), however, and if the plea is to stand, he is entitled to an evidentiary hearing to determine the exact amount of restitution he must pay.

Concern for bench and bar prompts a final thought. In the great majority of cases the defendant will have been informed prior to the time he enters his guilty plea that restitution will be required. While he may not have been told the precise amount, either the nature of the charges, the advantage of the plea bargain, the circumstances of the individual defendant, or the probable length of the sentence will ordinarily make it very clear that the precise amount of restitution could not have been a relevant factor in the decision-making process. Especially is this so where the facts indicate that the defendant was willing to plead even though there was no agreement on the length of sentence or the amount of fine that could be imposed. It is hardly likely that a defendant willing to enter a plea even though it entailed uncertainty as to the fact or length of imprisonment would have been deterred from pleading because he did not know the precise amount of restitution.

In the ordinary case, therefore, defense counsel should be quite selective in presenting claims such as that in the case at bench. We do not invite a wholesale assault on plea bargains, advantageous to the defendant when made. In addition, as noted *ante*, the inquiry will not be confined to the formal proceedings. If the extended record or the very nature of the crime to which the plea is entered indicates that defendant was or should have been aware of the approximate amount of restitution to be imposed, then the relevance question will not even arise. Where it is an issue, the facts will be examined with a very critical eye. Plea bargains should be honored by both parties, and withdrawal will be allowed only when it may fairly be said that the deal was not voluntary because defendant lacked information of true importance in the decision-making process.

GORDON, C.J., and CAMERON and HOLOHAN, JJ., concur.

MOELLER, Justice, concurring in part and dissenting in part.

I concur in that portion of the opinion which holds that the appellate courts of this state will not ordinarily consider requests to withdraw from plea agreements that have not first been presented to the trial court. However, I also agree with the majority that we should not apply that rule in this particular case. To do so would require the trial court to follow *Phillips* and set aside the plea agreement, a result which is clearly inappropriate.

It is on the merits of the voluntariness issue that I find myself in disagreement with the majority. I believe the plea agreement, including the restitution provision, is

clearly voluntary, that Rule 17.1 and Rule 17.2 of the Arizona Rules of Criminal Procedure have been fully complied with, that the defendant has no grounds to have his plea set aside, that there is no need for a "relevancy" hearing, and that the convictions and sentences should be affirmed in all respects.

A.R.S. § 13–603(C) requires the defendant to make restitution for the first degree murder, the armed robbery, and the first degree burglary to which he pled guilty. This requirement of law was communicated in writing to the defendant and to his counsel in the written plea agreement which they both read and signed. By signing the plea agreement the defendant expressly consented to pay restitution as part of his sentence. Additionally, at the plea proceedings in open court, the trial judge again personally advised the defendant of the restitution requirement and the defendant again expressly stated that he understood that restitution would be required. No more should be required to demonstrate the voluntariness of the plea agreement.

After entering into a plea agreement such as the one in issue, the parties are entitled to a restitution hearing on the amount of restitution and the manner of its payment. If error occurs at such a hearing, it is reviewable by appeal. Nothing remotely suggests involuntariness here, except the overly broad language of *Phillips.* I cannot divine how a defendant can validly plead guilty, leaving it to subsequent proceedings to determine whether he gets probation or fifty years in prison, but cannot validly plead guilty leaving the amount of restitution to be determined in later proceedings.

As the majority opinion notes, both *Lukens* and *Phillips* involved unusual factual circumstances which are not present here. *Phillips* could have been decided on the basis that, absent agreement, restitution may not be ordered for damages having no causal relationship to the crime to which the defendant pled. *Lukens* could have been decided on the basis that, absent

agreement, restitution may not be ordered in an amount exceeding the statutory limit of the theft offense to which the defendant pled. While the majority opinion in this case has the desirable effect of sharply limiting both *Phillips* and *Lukens,* it also has the effect of introducing a new, relatively undefined type of "relevancy litigation" and a new concept of divisible plea agreements. The new litigation and the new concept should not be necessary to a proper resolution of the voluntariness issue.

I was not a member of the court when either *Phillips* or *Lukens* was decided. I am mindful that precedents of the court should not lightly be overruled and certainly not for reasons so inconsequential as a change of personnel on the court. We now have enough experience with *Phillips* to know that it is creating great mischief in Arizona's criminal justice system. The instant case is but one example of that mischief. In an effort to be scrupulously fair, the court in *Phillips* announced a wide-ranging rule which has now proven to be both unworkable and unnecessary. I perceive no infirmity whatsoever under either the constitution or Rule 17 in imposing restitution upon a defendant who has been advised that the law requires it, who has agreed to it, and who has the right to have a hearing relative to the amount and manner of its payment. For these reasons, I respectfully suggest that we should revisit *Phillips* now and withdraw the broad rule there announced, rather than attempt to limit its effect in a piecemeal fashion.