767 P.2d 729

**STATE of Arizona, Appellee,**

v.

**Joseph Patrick PERKINS, Jr.,
Appellant.**

**No. 1 CA–CR 88–110.**

Court of Appeals of Arizona,
Division 1, Department B.

Dec. 1, 1988.

Review Denied Feb. 22, 1989.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Chief Counsel, Criminal Div., and Greg A. McCarthy, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Garrett W. Simpson, Deputy Public Defender, Phoenix, for appellant.

## OPINION

JACOBSON, Judge.

Appellant/defendant, Joseph Patrick Perkins, Jr., appeals from his conviction for driving while intoxicated (DWI) with two prior DWI misdemeanor convictions within the last 60 months, a class 5 felony, and from the imposition of intensive probation. The main issue on appeal is whether the trial court should have advised defendant, prior to accepting his guilty plea, of the possibility of intensive probation and that the terms could include a period of combined incarceration and restriction to his residence that would exceed the maximum prison sentence for the offense. Defendant contended in the trial court that the imposition of intensive probation violated the terms of his plea agreement, and contends on appeal that the trial court's failure to advise him of the terms of intensive probation rendered his guilty plea involuntary.

## FACTUAL BACKGROUND

By indictment dated August 20, 1987, defendant was charged with Count I, DWI with two prior DWI convictions, a class 5 felony, and Count II, second degree escape, a class 5 felony. The state filed an allegation of the dangerous nature of the felony. These charges arose out of an incident on June 17, 1987, when a highway patrol officer stopped defendant's vehicle for speeding in a Chandler residential area. He subsequently determined that defendant was intoxicated and that his driver's license had been suspended for three prior DWI convictions. The officer handcuffed defendant and placed him in the front seat of the patrol car. While the officer inventoried defendant's car in preparation for towing, defendant, still handcuffed, escaped. Defendant turned himself in the next day and was arrested for felony DWI, felony escape, and reckless driving.

On November 13, 1987, defendant entered into a plea agreement in which he agreed to plead guilty to DWI, a class 5 felony. In return, the state agreed to dismissal of Count II, the allegation of dangerousness, and all other charges arising out of the DPS departmental report. The agreement clearly indicated the statutory range of sentencing for the offense: a minimum of 1 year, a presumptive of 2 years, and a maximum of 2.5 years. The agreement also disclosed the special conditions of sentencing, including that defendant would serve six months flat time with the Department of Corrections, and that his driving privileges would be revoked. The parties also stipulated to the following additional terms, subject to court approval at the time of sentencing:

The defendant shall be placed on probation for 3 years & serve 6 months in Dept. of Corrections. He shall pay restitution in an amount not to exceed $100.00. No other agreements.

On November 13, 1987, at the change of plea hearing, the trial court addressed defendant personally, in the presence of defense counsel, and determined that the guilty plea was knowing, voluntary, intelligent, and had a factual basis. Regarding sentencing, the trial court advised defendant as follows:

THE COURT: ... You can be placed on probation. Even if you are placed on probation, you have to do six flat months, that is, six months, day for day, six calendar months with the Department of Corrections.

.    .    .    .    .

You've got an agreement with the State that says you will be placed on probation for three years, and you will serve six months in the Department of Corrections, and you will pay restitution in an amount not to exceed $100.00, and that there are no other agreements.

Do you understand all that?
THE DEFENDANT: Yes.
THE COURT: Do you have any questions about any of it?
THE DEFENDANT: No.
THE COURT: Do you understand that even though you have this agreement with the State about probation, when it comes time for you to be sentenced, if I think, for example, that to place you on probation is inappropriate, there is nothing in the plea agreement or in the law that can coerce me into following these agreements you have to place you on probation.

Do you understand that?
THE DEFENDANT: Yes.
THE COURT: If I don't want to follow this, I have to give you a chance to take back your guilty plea.

Do you understand that?
THE DEFENDANT: Yes.

The court accepted the plea, and postponed judgment and sentencing to permit preparation of a presentence report.

At time of sentencing, the trial court indicated that it had considered the recommendations in the presentence report. Defense counsel objected to those recommendations as follows:

[DEFENSE COUNSEL:] ... I read the presentence report. I discussed it with my client. The presentence report is recommending intensive probation.
THE COURT: Right.

[DEFENSE COUNSEL:] That, number one, would not be within the confines of the plea agreement....

THE COURT: All right. First of all, let me say I do not consider—when there is a stipulation of probation in the plea agreement, I do not consider intensive probation to be outside the confines of the plea agreement. It is probation, and it just a level of supervision. That is all it is, and I think the recommendation for intensive probation is appropriate.

The court then suspended the imposition of sentence for a period of three years and placed defendant on probation, after stating the following reasons, as required by A.R.S. § 12–292(D):

The reasons for that are I think there is a need for supervision in your case. I think probation is appropriate rather than prison in your case, because it does seem that you are an industrious person. You have had steady employment history and good job skills, and it would be— sending you to prison would not be appropriate in light of the fact that it appears that you have got a good chance to complete probation successfully and do something with yourself.

So I am going to place you on probation, but it is going to be intensive probation because there is the need for maximum supervision based upon your problems [with alcohol and driving].

The terms of intensive probation included a prison term of six months with the Department of Corrections, payment of restitution in the amount of $13.66 to reimburse the state for the handcuffs taken during the escape, and combined probation and victim compensation fees of $130.00. The court also ordered defendant to participate in a work order program 40 hours each month after his release from custody, to surrender his driver's license to the court, not to operate a vehicle without a valid license and insurance, and to refrain from using alcohol while on probation. The terms also included the statutory conditions of intensive probation required by A.R.S. § 12–292. Defendant timely appealed from this order.

## INTENSIVE PROBATION

As a preliminary matter, we note that the trial court properly rejected defendant's contention that the imposition of intensive probation violated the terms of the plea agreement. Intensive probation may be granted in accordance with the probation statutes, A.R.S. § 13–901 *et seq.* *See* A.R.S. § 12–292(C). Intensive probation is merely a "highly structured and closely supervised" form of probation. A.R.S. § 12–291. Therefore, intensive probation is a statutory option within the discretion of the trial court in imposing probation. We thus find no violation of the terms of the plea agreement in the trial court's imposition of intensive probation.

On appeal, defendant argues that his plea was rendered involuntary by the trial court's failure to advise him that he faced "de facto incarceration" by means of "house arrest" in excess of the maximum prison term that could be imposed. He bases this contention on the fact that the six-month prison term imposed as a term of probation, combined with the remaining thirty-month restriction to his residence required by A.R.S. § 12–292(F)(4), exceeds the statutory maximum sentence of 2.5 years for a class 5 felony. *See* A.R.S. §§ 13–701(B)(4), –702(A). The statutory condition defendant refers to requires that a probationer "[remain] at his place of residence at all times except to go to work, to attend school, community service and as specifically allowed in each instance by the adult probation officer." A.R.S. § 12–292(F)(4).

Rule 17.2, Arizona Rules of Criminal Procedure, requires that a defendant understand the possible range of sentence upon conviction and special conditions regarding that sentence. Rule 17.2, however, is an embodiment of the constitutional requirement that a defendant can only voluntarily, knowingly, and intelligently enter a plea if he or she understands its consequences. *See Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *State v. Rogel,* 116 Ariz. 114, 568 P.2d 421 (1977). Our courts have previously held that a defendant must be advised of the possibili-

ty of being given more jail time as a condition of probation than is possible as a maximum prison sentence. *State v. Cutler*, 121 Ariz. 328, 590 P.2d 444 (1979); *State v. Soto*, 126 Ariz. 477, 616 P.2d 937 (App. 1980). But we have also held that a defendant need not be advised of every possible term of probation in order to enter a voluntary guilty plea. *State v. Davis*, 119 Ariz. 140, 579 P.2d 1110 (App.1978). Recently, this court held that a defendant need not be advised of the requirement of community service as a term of intensive probation in order to enter a valid plea. *State v. Carranza*, 156 Ariz. 188, 751 P.2d 38 (App.1988).

In *Cutler*, the court required the trial court to advise defendant of the possibility of incarceration in excess of the maximum sentence because incarceration was a "severe deprivation of liberty." 121 Ariz. at 330, 590 P.2d at 446. The court also established that "[w]e cannot and do not require a trial judge to be clairvoyant and inform the defendant, before accepting a plea, of all potential conditions of probation that may later be imposed. The list would be legion." *Id.*

In *Carranza*, this court held that because community service as a term of probation was not *per se* a severe deprivation of liberty, a defendant need not be advised of the possibility of community service at the time the plea is entered. 156 Ariz. at 189, 751 P.2d at 39. The court reasoned as follows:

> While all terms and conditions of probation restrict a defendant's liberty to some extent, they will rarely be so onerous as to be considered a severe deprivation of liberty. Thus, terms and conditions of probation are not generally consequences or ramifications of a guilty plea of which defendants must be made aware prior to entering their pleas.

*Id.*

■ We believe this reasoning applies similarly to the requirement that a defendant on intensive probation remain at his residence after release from incarceration. The statutory requirement allows defendant to go freely to and from work, school, and community service, and to go elsewhere with the prior approval of his probation officer; this is hardly analogous to incarceration. It merely requires him to remain at home when not engaged in other approved probationary activities. This condition, like the requirement of community service, is not, *per se*, a severe deprivation of liberty. See *Carranza;* see also *State v. Harris*, 122 Ariz. 593, 594, 596 P.2d 731, 732 (App.1979) ("We decline to equate the restraint of probation with a 'severe deprivation of liberty.'")

■ We also note that defendant has not alleged that if he had been informed of this term of intensive probation, he would not have entered into the plea. *Cf. State v. Crowder*, 155 Ariz. 477, 747 P.2d 1176 (1987). Based on the foregoing, we hold that the trial court's failure to inform defendant that his term of "house arrest," combined with his six-month prison sentence, could exceed the maximum sentence, did not render his guilty plea involuntary.

## RESTITUTION

■ Defendant also raises the issue whether his plea was involuntary because he was not advised the specific amount of restitution. See *State v. Phillips*, 152 Ariz. 533, 733 P.2d 1116 (1987). The rule established in *Phillips* is that a "defendant must be aware of the specific dollar amount of restitution that can be imposed before we will find that the defendant voluntarily and intelligently agreed to pay restitution." 152 Ariz. at 535, 733 P.2d at 1118. The court qualified this, however, by reasoning that the "specific dollar amount" could be phrased either "with particularity" or "in an open-ended manner," for example, "up to" a maximum amount. *Id.* at n. 2.

Here, despite defendant's contention that "[t]he plea was silent as to restitution," the plea agreement clearly indicated that defendant would be ordered to pay restitution "in an amount not to exceed $100.00"; further, the trial court advised defendant of that fact and ordered defendant to pay restitution of $13.66, well below the cap to which he agreed. These circumstances

meet the requirements of *Phillips* for a voluntary plea; in any event, we find the amount involved to be de minimis. *See State v. Weston*, 155 Ariz. 247, 745 P.2d 994 (App.1987).

We have searched the record for fundamental error pursuant to A.R.S. § 13–4035. Having found none, we affirm defendant's conviction and the imposition of intensive probation.

FIDEL, P.J., and EUBANK, J., concur.