NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

PETER G., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, S.G., D.G., *Appellees*.

No. 1 CA-JV 16-0306
FILED 12-15-2016

Appeal from the Superior Court in Yavapai County
No. V1300JD201580005
The Honorable Anna C. Young, Judge

**AFFIRMED**

COUNSEL

Law Office of Florence M. Bruemmer, P.C., Anthem
By Florence M. Bruemmer
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Ashlee N. Hoffmann
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Chief Judge Michael J. Brown joined.

---

**W I N T H R O P**, Judge:

**¶1**        Peter G. ("Father") appeals the juvenile court's decision severing his parental rights to S.G. and D.G. (collectively, "the children"). Father argues that the trial court erred in terminating his parental rights because his waiver of his right to a severance trial was not voluntary.  For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

**¶2**        In March 2015, Father, R.G. ("Mother"),[1] four of their adult children, and two of their minor children were involved in a physical altercation with multiple police officers in a commercial parking lot.  One of the adult children was shot and killed during the encounter.  The surviving family members were arrested, and the two minor children were sent to a juvenile detention center.

**¶3**        DCS took temporary custody of the children and filed a petition for dependency.  Upon being released from detention, S.G. was placed in a licensed foster home and D.G. was placed in a group home.

**¶4**        In June 2015, the juvenile court ordered the children dependent as to Father on the ground of neglect, due to his incarceration and criminal conduct.  The court also found S.G. dependent as to Father based on neglect for failure to protect.

---

[1]        Mother did not contest the termination of her parental rights and is not a party to this appeal.

**¶5**        After initially finding that a case plan of family reunification was appropriate, the court later granted DCS's request to change the case plan to severance and adoption.[2]

**¶6**        DCS subsequently moved to terminate Father's parental rights to the children, alleging that Father neglected the children by not providing them with basic necessities, such as schooling and medical care. *See* Ariz. Rev. Stat. ("A.R.S.") §§ 8-201(24), -533(B)(2).[3] DCS also alleged that Father neglected S.G. by failing to remove her from the center of the family's 2015 brawl with police officers in the parking lot. Finally, DCS alleged that Father willfully abused or failed to protect the children from willful abuse, based on disclosures made by the children regarding alleged sexual abuse and manipulation by Father. *See* A.R.S. §§ 8-201(2), -533(B)(2).

**¶7**        At the Report and Review and Pretrial Conference, Father's counsel advised the court that Father might change his position regarding severance if he would be able to address the court regarding placement.[4] The court agreed to allow Father "to make statements regarding placement at the beginning of trial and prior to testimony," noting, however, that it "will not make a decision regarding placement that day."

**¶8**        In June 2016, the court conducted a severance hearing and, at the outset, indicated it would not be addressing any issues relating to the placement on that day. Before hearing testimony, the court noted that Father had indicated at the prior hearing that "if [he] were allowed to give an unsworn statement, 15 minutes, that he would be changing his plea on the severance." Father's attorney then stated that Father would not be changing his plea, and that he wanted to go forward with the severance

---

[2]        Along with its request for a change in case plan, DCS submitted a report to the juvenile court indicating, among other things, that Father's "strong antigovernment and antisocial beliefs were a contributing factor in the reported abuse of his children over the years" and that "[s]hould [Father's] children be returned to his care, there is serious concern he would return to his antigovernment ideals and again keep the children isolated from society." Further, the report noted that "[n]either child has expressed a desire to return to their parents['] care."

[3]        Absent material changes after relevant events, we cite a statute's current version.

[4]        Father had concerns about his children being placed with their paternal grandfather.

trial and address the court regarding his position on placement. The court reiterated that it would not address placement at this hearing.

¶9          After entering exhibits into evidence for trial, Father's counsel requested a five-minute recess. Upon returning, Father's counsel stated,

> Your Honor, my client feels like he didn't understand it was an either/or proposition with regard to addressing the court or going to trial. I asked him what's the most important to him. It's a very personal decision as to him, as to what he wanted to proceed with. I do want to note his objection as to that, but he would prefer to keep the children safe and address you with regard to placement.

The court then confirmed that Father would be making an unsworn statement and changing his plea to no contest on the termination, again specifically advising that if Father preferred to proceed with a severance trial, he had the right to do so.

¶10          To confirm Father's decision, the court addressed him directly, asking if he preferred to give a 15-minute statement and change his plea to no contest. Father stated, "It's not how I'd like it, but my priority is to keep my children safe." The court then engaged in a colloquy with Father to determine whether he wished to proceed with the severance hearing:

> THE COURT: So you'd be agreeing basically that I would allow you to make a 15-minute unsworn statement, and then you would be entering a plea of no contest to the termination; is that correct?
>
> THE FATHER: I guess, yeah.
>
> THE COURT: Well, not I guess. It's either a "yes" or "no."
>
> THE FATHER: Well, I don't seem to have any choice, so yes.
>
> THE COURT: Well, you do have a choice. You have an absolute right to proceed with the trial we've got set.
>
> THE FATHER: I was told if my rights were severed I wouldn't have anything to do with placement or say anything about placement, so it's more important to me that I be able to speak and they be safe.

THE COURT: But you understand that I would not be making any decisions regarding placement today. Do you understand that?

THE FATHER: I do understand that.

THE COURT: All right. Just to confirm with you your understanding of your trial rights. You have the absolute right to go forward with the severance trial we've got set. Your attorney would be able to ask questions of the other party's witnesses. Your attorney could subpoena people to testify for you and you could choose to testify on your own behalf. Do you understand all that?

THE FATHER: Yes.

¶11            When the court again attempted to confirm that Father was waiving his right to trial, Father responded he was doing so "[i]n order to speak." The court then stated that "it's not in order to speak" because Father had the right to testify. Father stated that he felt he was being "black mailed" because if he lost at trial he would not have a say in the children's placement. After again reiterating Father's absolute right to a trial, the court stated Father's two options were to "either go forward with the trial . . . or [] waive your right to trial and enter the plea of no contest." Father formally waived his right to trial, and the court accepted his plea of no contest, noting it was made knowingly, intelligently, and voluntarily. Father then briefly addressed the court on placement before exiting the courtroom.

¶12            After Father was excused, the court heard testimony from the DCS case manager and indicated it would take the matter under advisement. The court subsequently issued an order severing Father's parental rights to the children, finding that Father "knowingly, intelligently and voluntarily entered a plea of no contest to the termination of his parental rights." The court further found that DCS had established the statutory grounds for severance of Father's parental rights and that severance was in the children's best interests.

¶13            Father timely appealed, and we have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution; A.R.S. § 8-235(A); and Rule 103(A) of the Arizona Rules of Procedure for the Juvenile Court.

## ANALYSIS[5]

**¶14**      Father argues that the juvenile court erred in terminating his parental rights to the children because his waiver of his right to a trial was not voluntary.[6]  He contends that the juvenile court "induced" him into waiving his constitutional right to a trial by promising that he would be permitted to address the court regarding placement if he changed his plea to no contest.

**¶15**      Pursuant to rule 66(D)(1) of the Arizona Rules of Juvenile Procedure, a parent may waive his right to a severance trial by not contesting the allegations against him.  In accepting a plea of no contest, the juvenile court shall:

    a.  Determine whether the party understands the rights being waived;

    b.  Determine whether the admission or plea of no contest is knowingly, intelligently and voluntarily made;

    c.  Determine whether a factual basis exists to support the termination of parental rights; and

    d.  Proceed with entering the findings and orders as set forth in subsection (F) of this rule.

Ariz. R. Juv. P. 66(D)(1).

**¶16**      "In reviewing the procedural requirements for accepting 'a no contest plea in a termination proceeding, we turn for guidance to the analogous context of guilty or no contest pleas made by criminal defendants.'" *Timothy W. v. Dep't of Child Safety*, 240 Ariz. 232, 233, ¶ 6, 377 P.3d 1026, 1027 (App. 2016) (quoting *Tina T. v. Dep't of Child Safety*, 236 Ariz.

---

[5]    We review a juvenile court's termination order in the light most favorable to sustaining the court's decision. *Denise R. v. Ariz. Dep't of Econ. Sec.*, 221 Ariz. 92, 95, ¶ 10, 210 P.3d 1263, 1266 (App. 2009).

[6]    Father does not contest the juvenile court's findings regarding the statutory grounds for severance or the court's best interests findings. Accordingly, he has waived any challenge on appeal to those findings. *See Childress Buick Co. v. O'Connell*, 198 Ariz. 454, 459, ¶ 29, 11 P.3d 413, 418 (App. 2000) ("[I]ssues not clearly raised in appellate briefs are deemed waived.").

295, 298-99, ¶ 15, 339 P.3d 1040, 1043-44 (App. 2014)). In the criminal context, a defendant's waiver of a constitutional right is valid where it is "done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. U.S.*, 397 U.S. 742, 748 (1970). "A plea will be found involuntary only where a defendant lacks information of 'true importance in the decision-making process.'" *State v. Pac*, 165 Ariz. 294, 295-96, 798 P.2d 1303, 1304-05 (1990) (quoting *State v. Crowder*, 155 Ariz. 477, 481, 747 P.2d 1176, 1180 (1987)).

**¶17** Here, we find no indication that Father's no contest plea was anything other than voluntary. Father received and signed a Form 3 ("Notice to Parent in Termination Action"),[7] which advised him of his right to trial. Additionally, the juvenile court's extensive dialogue with Father, explaining his options and advising him multiple times of his right to proceed with trial, refutes any contention that Father was unaware of the circumstances of his plea. *Cf. State v. Rodriguez*, 25 Ariz. App. 111, 113-14, 541 P.2d 574, 576-77 (App. 1975) (stating that the defendant's plea was valid where the court engaged in an oral colloquy with him regarding the voluntariness of his plea); *State v. Baker*, 217 Ariz. 118, 121, ¶ 15, 170 P.3d 727, 730 (App. 2007) (holding that the defendant's waiver of his jury trial right was invalid where the transcript did not contain a discussion of waiver or show the court had a personal colloquy with the defendant).

**¶18** Although Father argues that he "was in a catch-22 because, in order to address the court regarding placement, he had to give up his right to trial," the record does not indicate the court, or anyone else, induced him to give up his right to a trial. Rather, the court patiently and repetitively confirmed Father's understanding and decision to not contest the statutory basis for severance and the best interests analysis. Although the court reiterated that it would not be addressing placement on that day, it nevertheless permitted Father to make a statement concerning placement.

**¶19** Finally, the fact that Father was represented and advised by counsel throughout the dependency proceedings and during the severance trial at which he entered his no contest plea "strongly militates against the conclusion that the plea was involuntary." *State v. Lerch*, 107 Ariz. 529, 530, 490 P.2d 1, 3 (1971) (internal quotation marks omitted). Accordingly, we find no abuse of discretion.

---

[7] *See* Ariz. R.P. Juv. Ct. Form 3.

## CONCLUSION

¶20　　　The juvenile court's order terminating Father's parental rights is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:　AA