NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

E.H.,
*Petitioner*,

*v.*

THE HONORABLE DAN SLAYTON, Judge
of the SUPERIOR COURT OF THE
STATE OF ARIZONA, in and for the
County of COCONINO,
*Respondent Judge*,

STATE OF ARIZONA[1]; JASON CONLEE; LENDA
HESTER; KIMMY WILSON,
*Real Parties in Interest*.

No. 1 CA-SA 19-0004
FILED 3-14-2019

Petition for Special Action from the Superior Court in Coconino County
No. CR2016-00434; CR2016-00435; CR2016-00436
The Honorable Dan R. Slayton, Judge

**JURISDICTION DECLINED**

---

[1] On the court's own motion, it is ordered amending the caption as reflected in this decision. The above referenced caption shall be used on all further documents filed in this special action.

COUNSEL

Arizona Voice for Crime Victims, Phoenix
By Colleen Clase, Jessica Gattuso, Eric Aiken
*Counsel for Petitioner*

Coconino County Attorney's Office, Flagstaff
By Stacy L. Krueger, Michael S. Tunink
*Counsel for Real Party in Interest State*

The Zickerman Law Office, PLLC, Flagstaff
By Adam Zickerman
*Counsel for Real Party in Interest Conlee*

C. Kenneth Ray, II, PLLC, Prescott
By C. Kenneth Ray, II
*Counsel for Real Party in Interest Hester*

Griffen & Stevens Law Firm, PLLC, Flagstaff
By Ryan J. Stevens
*Counsel for Real Party in Interest Wilson*

**MEMORANDUM DECISION**

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Michael J. Brown joined. Judge Jennifer M. Perkins specially concurred.

**J O H N S E N**, Judge:

¶1        A six-year-old boy was murdered by his aunt in 2015. At the time, the boy's older sister, E.H., was 12. The aunt had raised E.H. and her brother from birth alongside the aunt's own four children. The aunt was convicted of first-degree murder and child abuse in the boy's death and sentenced to natural life in prison. The court ordered her to pay restitution and kept restitution open. Three other adults also were charged in the child's death. Each of the three defendants, the real parties in interest here, pled guilty to endangerment and/or child abuse. In accepting the pleas of

2

the three defendants, the superior court ordered that each of the defendants was jointly and severally liable for restitution capped at $500,000, and put off determining the amount of restitution pending completion of the defendants' sentences. Through counsel, E.H. objected to each of the pleas, arguing that the restitution caps violated her right to full economic loss under the Victims Bill of Rights ("VBR"), Article 2, Section 2.1 of the Arizona Constitution, and associated statutes, including Arizona Revised Statutes ("A.R.S.") sections 13-603 (2019) and -804 (2019).[2] In this special action, E.H. argues (1) the State improperly waived her right to restitution by agreeing to the caps and (2) the superior court deprived her of her rights under the VBR by imposing the caps. She also argues the court improperly deprived her of her right under A.R.S. §§ 13-4437(A), (D) (2019) to fully participate in the criminal proceedings when it did not permit her counsel to sit in the well of the courtroom.

¶2     At the time the court imposed sentences on the aunt and the three others, E.H. was in the legal custody of the Department of Child Safety, which did not file a restitution claim on her behalf. At oral argument in this special action, counsel informed the court that E.H. now has been adopted. Her petition argues that she may require counseling and associated services over many years, perhaps even throughout her lifetime. We are told that her adoptive parents will file for restitution on her behalf to recover the costs of that counseling.

¶3     Once E.H. files a claim, the superior court must order the defendants to make restitution for the full amount of economic loss caused to E.H. by the crimes the defendants committed against her brother. *See* A.R.S. §§ 13-603(C) ("court shall require the convicted person to make restitution to . . . the victim . . . in the full amount of the economic loss as determined by the court"); -804(B) ("In ordering restitution for economic loss . . . the court shall consider all losses caused by the criminal offense or offenses for which the defendant has been convicted."); -4437(E) ("[T]he victim has the right to present evidence or information and to make an argument to the court, personally or through counsel, at any proceeding to determine the amount of restitution pursuant to § 13-804.").

¶4     The record makes clear that the superior court understood it could accept the pleas of the three defendants only if those pleas included restitution caps. In support of the caps, the State cites *State v. Crowder*, 155 Ariz. 477 (1987), *State v. Phillips*, 152 Ariz. 533 (1987), and *State v. Lukens*, 151

---

[2]     Absent material revision after the relevant date, we cite the current version of a statute or rule.

Ariz. 502 (1986), in arguing that a pleading defendant has a due-process right to know the maximum amount of restitution to which the plea may subject the defendant. E.H. counters that each of the cited cases was issued before adoption of the VBR.

¶5            In the exercise of our discretion, we decline to accept jurisdiction of the petition for special action. *See Williams v. Miles*, 212 Ariz. 155, 156, ¶ 9 (App. 2006) (decision to accept special-action jurisdiction is "largely discretionary"). With respect to E.H.'s contention that the restitution caps violate her right to restitution, at this stage of the proceedings, there are too many unknowns. Unless E.H.'s claimed economic loss exceeds $500,000, it is not clear how she would be prejudiced by the restitution caps the superior court imposed. At this point we do not know the amount of economic loss that E.H. will claim. Moreover, in response to a question at oral argument, counsel for the State suggested that if the proof of economic loss E.H. eventually presents warrants restitution in excess of $500,000, the caps would not bar the superior court from imposing restitution in the amount proved. In that event, counsel suggested, once the court imposes restitution that exceeds the cap, the defendants might seek leave to withdraw from their plea agreements. *See State v. Grijalba*, 157 Ariz. 112, 115 (1988) (plea may be vacated when defendant did not agree to the amount of restitution eventually imposed if amount of restitution was "relevant and material" to defendant's decision to accept the plea).

¶6            Thus, at bottom, we cannot know now whether the superior court's decision to cap restitution imposed against the three defendants will prejudice E.H. Under these circumstances, we decline to exercise our discretion to address the constitutional issues her petition raises. *See Abbott v. Banner Health Network*, 239 Ariz. 409, 413, ¶ 10 (2016) ("courts should not unnecessarily decide constitutional questions"); *Aitken v. Indus. Comm'n*, 183 Ariz. 387, 389 (1995) ("well-settled that the constitutionality of a statute will not be determined in any case, unless such determination is absolutely necessary") (citation omitted); *see also Matal v. Tam*, 137 S. Ct. 1744, 1755 (2017) ("[W]e ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable.") (citation omitted); *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) ("Courts should think carefully before expending scarce judicial resources to resolve difficult and novel questions of constitutional or statutory interpretation that will have no effect on the outcome of the case.") (quotation and citation omitted).

¶7        Finally, in the exercise of our discretion, we also decline to accept jurisdiction over E.H.'s contention that the court violated her rights by refusing to permit her counsel to sit in the well of the courtroom.

**P E R K I N S**, Judge, specially concurring:

¶8        E.H. asked this court whether her right to receive the full economic value of her loss was waived, over her objection, when the trial court directed the parties to include a restitution cap in the plea agreements at issue. I agree with the panel that, as framed, E.H.'s asserted claim is not ripe for this Court to resolve, for the reasons discussed *supra* at ¶¶ 5-6. I write separately to note the presence of a purely legal question of statewide importance that has apparently lain unresolved for more than a quarter century and which requires our supreme court to reconsider its case law. While our superior courts and criminal practitioners have identified a practical means of addressing that unresolved question, as explained below, this "solution" rests on a troubling constitutional inconsistency. Whether in this or another case, our supreme court should take up this issue.

¶9        The VBR imbues criminal victims with several specific rights of constitutional significance and dimension. One such right is full restitution. The State and defendants argue that a victim's constitutional right to restitution is subordinate to a criminal defendant's right to "knowingly, intelligently, and voluntarily" enter into a plea agreement that places a cap on restitution, even over the victim's objection. To support these contentions, the State and defendants rely on a series of pre-VBR decisions from our supreme court.

¶10        In particular, in *State v. Phillips*, our supreme court held that a defendant cannot "thoroughly understand the consequences of his agreement to make restitution if [the defendant] is unaware of the restitutionary amount that can be imposed." 152 Ariz. 533, 535 (1987). The court explained that a "defendant must be aware of the specific dollar amounts of restitution" the court can order before it can accept the defendant's guilty plea. *Id*. The *Phillips* rule is explicitly based on federal due process rights under the fourteenth amendment to the United States Constitution. *State v. Adams*, 159 Ariz. 168, 170 (1988) (citations omitted).

¶11        Evaluating the VBR's impact, if any, on the *Phillips* rule must involve an examination of the federal and state due process requirements for defendants entering into a plea agreement weighed against victims' state constitutional rights to full restitution.

**¶12**         As noted above, the court in *Phillips* based its rule explicitly on federal constitutional due process requirements. The U. S. Constitution mandates that criminal defendants be afforded due process of law through the fifth and fourteenth amendments. U.S. Const. amend. V; XIV, § 1. In federal criminal proceedings involving guilty pleas, the court must advise defendants of their rights in a manner similar to our procedures under Arizona Rule of Criminal Procedure 17.2. *Compare* Fed. R. Crim. P. 11 *with* Ariz. R. Crim. P. 17.2. Unlike our rule, which does not explicitly address restitution, Federal Rule of Criminal Procedure 11(b)(1)(K) requires the court to inform the defendant of "the court's authority to order restitution" before accepting a guilty plea. Notably, the comments to the 1985 amendment explain that "[t]he exact amount or upper limit" of restitution need not be stated at the time of the plea. Fed. R. Crim. P. 11(c)(1) 1985 cmt. The federal practice of informing defendants of the possibility of restitution before accepting a guilty plea, without specifying the amount or maximum amount of restitution, has never been held to violate a defendant's due-process rights. *See, e.g., Dolan v. United States*, 560 U.S. 605, 608-09 (2010) (discussing, without noting any constitutional concerns, a plea agreement that left the amount of restitution open until appropriate restitution could be determined); *cf. State v. Zaputil*, 220 Ariz. 425, 428, ¶ 11 (App. 2008) (restitution, though part of the sentencing process, "is not a penalty or a disability").

**¶13**         Thus, the federal constitution does not require defendants entering a guilty plea to be advised of the specific amount of restitution they will pay or the maximum amount they could be ordered to pay. The only requirement is that the defendant be warned the court may impose restitution.

**¶14**         The question left open is whether the Arizona Constitution separately requires that a defendant know the upper limit of a potential restitution award, and whether that requirement overrides a victim's state constitutional right to full restitution. As noted in the panel's decision, *supra* at ¶ 5, these legal questions remain unanswered because of a practical work-around solution. That is, courts and parties to criminal proceedings require plea agreements to include a specific restitution cap, relying on the *Phillips* rule. But once entered, the courts, including this one as expressed in this decision, *supra* ¶ 5, presume they may subsequently order restitution exceeding that cap should a victim prove economic loss above the amount of the cap.

**¶15**         The State should not offer, and the court should not accept, a plea agreement with a purported cap that can later be exceeded. To do so

6

is, at least arguably, worse in terms of a defendant's right to knowingly, intelligently, and voluntarily accept a plea agreement because the officers of our courts are promoting a practice of allowing defendants to enter into plea agreements with illusory terms. Moreover, because we will not permit a defendant to vacate a plea agreement "[w]here the defendant has received the full benefit of the plea bargain," a defendant who is ordered to pay restitution exceeding the cap in their plea agreement will have limited recourse when restitution is ordered at or near the end of his sentence. *State v. Crowder*, 155 Ariz. 477, 481 (1987) (*citing Brady v. United States*, 397 U.S. 742, 757 (1970)).

¶16          As noted above, the constitutional avoidance doctrine, *supra* ¶ 6, generally directs us to resolve cases on other grounds to avoid making pronouncements of constitutional law unless doing so is necessary. On this basis, the panel opts against taking up the constitutional questions presented. I do not disagree with the application of the doctrine in this instance, by this intermediate appellate court, in the somewhat unusual factual scenario presented by this special action. Nonetheless, I do not believe that the doctrine should continually be applied so as to encourage the development of a work-around "solution" that raises, rather than resolves, constitutional concerns. At some point the duty of a judge is to resolve difficult, even constitutional, questions.

