798 P.2d 1373

**STATE of Arizona, Appellee,**

v.

**Jacob Edgar WIDEMAN, Appellant.**

**No. 1 CA–CR 89–966.**

Court of Appeals of Arizona, Division 1, Department E.

May 22, 1990.

Review Denied Oct. 23, 1990.

Robert K. Corbin, Atty. Gen. by Jessica G. Funkhouser, Chief Counsel, Crim. Div., and Gerald R. Grant, Asst. Atty. Gen., Phoenix, for appellee.

Allen, Kimerer & LaVelle by Michael D. Kimerer, Garth Smith and Tonya McMath, Phoenix, for appellant.

## OPINION

SHELLEY, Judge.

Appellant Jacob Edgar Wideman (defendant) pled guilty to first-degree murder and to two counts of grand theft pursuant to a plea agreement. On August 13, 1986, defendant killed Eric Kane after which he stole an automobile and over $3,000 in traveler's checks. The vehicle was recovered together with $1,500 in traveler's checks. The defendant had forged and cashed traveler's checks approximating $1,500.

At the change-of-plea hearing, the trial court considered the terms of the plea agreement and found that the defendant had entered the pleas knowingly, intelligently, and voluntarily. The defendant was sentenced to life imprisonment without possibility of parole for twenty-five years on the first-degree murder charge, and to aggravated terms of ten years on the two counts of theft, concurrent with each other and with the life sentence.

The defendant timely appealed the judgments and sentences. On appeal, the defendant argues that: (1) his pleas were involuntary because the amount of restitution was not properly set prior to acceptance of the plea; (2) restitution for travel expenses and for family counseling expenses was assessed in error; and (3) the trial court improperly imposed aggravated terms of imprisonment on the theft counts.

## INVOLUNTARINESS OF THE PLEA

The defendant contends that his pleas were involuntary because the amount of restitution exceeded the amount estimated prior to the entry of his guilty pleas. In the defendant's plea agreement, restitution was required but there was no amount mentioned. The state asserts that the defendant has waived his right to withdraw his pleas because he did not object to the imposition of the restitution during or after the restitution hearing, and did not request the trial court to allow him to withdraw his pleas. At the change-of-plea hearing, the state listed the items of restitution it was requesting, but noted that "the parties may well disagree as to the propriety" of the various categories and amounts. The categories and amounts approximated by the state were: (1) the travel expenses of the victim's family to attend various court hearings ($5,000 to $7,000); (2) funeral expenses for the victim (approximately $4,500); (3) mental health counseling for the victim's family (approximately $4,000); and (4) traveler's checks spent ($1,500). *The maximum amounts totaled $17,000.* The state pointed out that defense counsel objected to some of the items of restitution on the grounds they were "consequential amounts that should not be ordered as restitution." The trial court found that the defendant entered his pleas knowingly, intelligently, and voluntarily; accepted the pleas; and set a restitution hearing to determine the amount of restitution.

At the restitution hearing, the state introduced into evidence a number of the victim's family's hotel bills, air fare, and other expense items. The amount claimed for funeral/burial expenses was $5,496.00; for the mental health counseling expenses of the victim's family, $9,475.00; and for expenses incidental to the family's attendance at the various hearings, $15,570.79, for a total of $30,541.79. This included expenses for airfare, limousine service, telephone calls, and hotel bills at various times for up to five people: the victim's mother, father, sister, brother, and grandmother. *The trial court awarded $29,243.74 as restitution.* Of the amount awarded by the trial court, $15,570.79 was for travel expenses, and $8,601.68 was for family counseling.

Immediately prior to the hearing, defendant received a 68–page restitution memo detailing the requested items for restitution with a total amount in excess of $30,000. The victim's father testified in detail with respect to the requested amounts and was subject to cross-examination.

Counsel for defendant at the conclusion of the evidence with respect to restitution said:

Your Honor, I have some comments with regard to the restitution, first. *The amounts submitted today are, in addition to being in excess of the estimates that were given*—for example, I recall that the travel expense estimate was between five and $7500.00—5,000 and $7500.00. We object to—I object to the travel expenses being awarded as restitution—as restitution, and some of the other items which I submit are not restitution or are not appropriate items for restitution.

For example, there is the cost—the travel expense, and lodging is the largest one. That was something that the Kane family chose to do, to come out to Arizona. It was not something that was caused by—there is a causal—there is not a proximate-cause basis for that. A transcript of the transfer hearing—requesting a transcript of the transfer hearing, that is not something that is a proper subject for restitution.

So, with respect to restitution, I think that the request for an order that Jake pay that amount of restitution is excessive, and I ask the Court to award reasonable amounts for those matters only for which there is a direct causal relationship, rather than those that should ordinarily be established in a civil proceeding. [Emphasis added.]

■ Defendant contends that this statement constituted an objection to the trial court's consideration of amounts in excess of the estimated amounts made prior to the time of the entry of the pleas of guilt. We disagree. He did mention that the

amounts were in excess of the estimates but he did not follow through with a specific objection. His only objection had to do with requested restitution items which he contended "are not appropriate items for restitution."

Defendant relies on the following cases: *State v. Crowder*, 155 Ariz. 477, 747 P.2d 1176 (1987); *State v. Phillips*, 152 Ariz. 533, 733 P.2d 1116 (1987); *State v. Lukens*, 151 Ariz. 502, 729 P.2d 306 (1986). The *Lukens* decision was limited to a holding that a defendant shall not be required to pay restitution in amounts that exceed the statutorily prescribed monetary parameters of the crime to which he pleads guilty unless the defendant voluntarily and intelligently agrees to pay the higher amount.

In *Phillips*, our supreme court stated:
[W]e will conclude that appellant thoroughly understood the *consequences of his agreement to pay restitution* only if the record contains at least one of the following: (1) a statement in the plea agreement setting forth a specific dollar amount of restitution; (2) a statement by the defendant indicating agreement to pay a specific dollar amount of restitution; or (3) a warning by the trial judge prior to accepting the defendant's plea that he can order restitution of a specific dollar amount.

*Id.* 152 Ariz. at 535, 733 P.2d at 1118 (emphasis added).

*Crowder* held that the proper procedure in seeking to withdraw a plea of guilty is to file a Rule 32 petition for post-conviction relief. In *Crowder*, the court found that defendant had not been advised as required by *Phillips*. Upon remanding the case to the trial court for an evidentiary hearing, the court stated:
[T]he trial court should apply the legal principles stated in this opinion to determine whether the extended record shows defendant had knowledge of the amount of restitution. If not, the court must then determine whether such lack of knowledge was relevant and material to the making of the plea agreement. If the court finds from all the evidence that the approximate amount of restitution

was unknown to defendant and was a relevant and material factor in defendant's decision to plead, then the trial court should apply *Lukens* and *Phillips* and vacate the entire plea.

*State v. Crowder*, 155 Ariz. 477, 482, 747 P.2d 1176, 1181 (1987).

In *Lukens*, *Phillips*, and *Crowder*, contested restitution hearings were not held and waiver was not an issue. In this case, the restitution memo filed just prior to the restitution hearing and the hearing itself afforded the defendant ample opportunity to object based on the fact that the requested amounts were substantially in excess of the maximum amounts stated at the time the pleas were entered. Defendant also had ample opportunity to request withdrawal of his guilty pleas in the event that the court ordered the excess amounts and to move to withdraw his pleas after the court made the award. *Lukens* was decided on November 30, 1986. *Phillips* was decided February 26, 1987, and in *Crowder*, the defendant's plea was entered prior to the decisions in *Lukens* and *Phillips*. He was sentenced on December 4, 1986, only 14 days after the decision in *Lukens* was filed. Therefore, it could not be contended that the court in *Crowder* was aware of the changes in law set forth in *Lukens* and *Phillips* at the time he entered his pleas or probably even at the time of sentencing. The restitution and sentencing hearing in the instant case occurred more than a year after the *Lukens*, *Phillips*, and *Crowder* opinions were filed. Nevertheless, defendant failed to claim that his pleas were not voluntarily and intelligently made until that issue was presented on appeal. In the case of *State v. Holder*, 155 Ariz. 83, 85, 745 P.2d 141, 143 (1987), our supreme court stated:
Absent fundamental error, error is usually considered to be waived on appeal unless it was objected to at trial. *State v. Henley*, 141 Ariz. 465, 687 P.2d 1220 (1984). This principle also applies to constitutional error. *See State v. Magallanes*, 110 Ariz. 235, 517 P.2d 505 (1973). Only fundamental error, that is, error which goes to the very foundation

of the case, may be raised for the first time on appeal. *State v. Burton,* 144 Ariz. 248, 697 P.2d 331 (1985).

The error in the instant case was not fundamental. We hold under the facts in this case, that the failure to present the issue of excess restitution amounts to the trial court during the restitution and sentencing hearing and after the court set the amount of restitution constituted a waiver of the defendant's right to raise this issue on appeal.

■ The state posits that the amount of restitution was not a relevant factor in appellant's decision to plead guilty. We agree. In the case of *State v. Grijalba,* 157 Ariz. 112, 115, 755 P.2d 417, 420 (1988), our supreme court stated:

> Assuming that the defendant may not have been told the precise amount of restitution, we believe, and hold that there are instances when an appellate court can conclude from the record that the amount of restitution could not have been a relevant factor in defendant's decision-making process. In such instances the plea will be upheld.

Based on our examination of the record, we conclude that the amount of restitution could not have been a relevant factor in defendant's decision-making process. He was facing a first-degree felony murder charge together with two counts of grand theft with a maximum penalty of 15 years on each count. The plea agreement provided that the sentence for the murder would be life imprisonment without the possibility of parole for 25 years. The agreement also provided that the sentences on the two counts of grand theft would run concurrently with each other and with the sentence for the murder. It is apparent that as a result of this plea agreement, the sentences on the theft charges would be completed prior to appellant's eligibility for parole on the murder charge. Without the plea agreement, the punishment on each of the three charges could have been set to run consecutively. Defendant avoided this possibility by entering his pleas of guilty. The concessions made in the plea agreement were very significant. He had been advised that the law requires restitution, he agreed to pay restitution, and he, in fact, had a contested hearing relevant to the amount of restitution. Furthermore, defendant failed: (1) to object to the trial court's consideration of restitution and its award of restitution substantially in excess of the maximum estimated amounts; and (2) to request withdrawal of his guilty pleas on the ground that they were involuntarily made based upon the amount of restitution considered and awarded. Based on this record, we find that the amount of restitution was not a relevant factor in defendant's decision-making process in deciding to enter guilty pleas.

## APPROPRIATE ITEMS FOR RESTITUTION

■ The defendant claims that the award of restitution for travel expenses for the victim's family to attend various court hearings and for mental health counseling for the victim's family was inappropriate, and that these categories of expenses are not proper items of restitution under Arizona law. Arizona law requires a trial court to impose restitution for economic loss as a part of the defendant's sentencing. In this case, since the victim died, the members of the victim's immediate family are the appropriate parties to whom the defendant must make restitution. A.R.S. § 13–603(C). A.R.S. § 13–105.11 defines economic loss as follows:

> 'Economic loss' means any loss incurred by a person as a result of the commission of an offense. Economic loss includes lost interest, lost earnings and other losses which would not have been incurred but for the offense. Economic loss does not include loss incurred by the convicted person, damages for pain and suffering, punitive damages *or consequential damages.* [Emphasis added.]

In the case of *State v. Pearce,* 156 Ariz. 287, 751 P.2d 603 (App.1988), Pearce pled guilty to theft resulting from his conversion of three pieces of equipment from Woudenberg Leasing Company. The trial court ordered restitution not only for the value of the equipment that Pearce converted, but it ordered Pearce to pay restitu-

tion for the amount of monies that Woudenberg would have earned if the lease had been carried out. The trial court interpreted economic loss to include the entire amount of the lease contract deficiencies. The appellate court stated:

> We do not believe Woudenberg is entitled to use the criminal justice system to enforce its lease contract. Our statute specifically excludes from the victim's economic loss for restitution purposes any 'consequential damages.' Pearce's theft or damaging of the equipment here resulted in loss of equipment or its value, but the resulting breach of the lease and lost profits are consequential damages resulting from Pearce's conversion. Such lost profits do not 'flow' from the acts to which Pearce pled guilty.

Part of the difficulty in this case may result from a failure to distinguish between restitution in a criminal case and civil damages which may be recovered in a separate civil proceeding. Restitution and civil damages are independent under Arizona law in that a restitution award has no effect on the victim's ability to recover damages in a civil action. A.R.S. § 13–807 provides that '[a]n order of restitution in favor of a person does not preclude that person from bringing a separate civil action and proving in that action damages in excess of the amount of the restitution order.'

*Pearce*, 156 Ariz. at 288–89, 751 P.2d at 604–05. The record shows that a civil suit was filed by the victim's family.

As stated in *Pearce*, lost profits "do not flow" from the acts to which Pearce pled guilty and were therefore consequential damages. In this case, the loss claimed for travel expenses "do not flow" from the acts to which the defendant pled guilty. To constitute an economic loss, the loss must be a direct result of the defendant's crime. Travel expenses were an indirect loss. Since the victim's family was not required to attend any of the hearings, this expense is not directly related to the defendant's crime, but is a "consequential" damage. We sympathize with the victim's family's desire to attend these hearings, but find this was a matter of choice and not an

economic loss caused by defendant's crime. The trial court erred in awarding restitution for travel expenses.

 Defendant asserts that it was improper for the trial court to award restitution for the amounts expended for mental health counseling for the victim's mother, father, sister, and brother. He posits that this is akin to restitution for pain and suffering and is therefore precluded by specific mention in the statutory definition of economic loss. We disagree. Pain and suffering does not constitute an economic loss. The costs of alleviating the results of pain and suffering *are* an economic loss. Medical expenses for the counseling are directly attributable to the victim's death. The trial court correctly awarded restitution for mental health counseling expenses.

## AGGRAVATING AND MITIGATING CIRCUMSTANCES

The defendant argues that the trial court improperly aggravated the sentences for the theft counts because the trial judge did not separate the aggravating and mitigating circumstances for the first-degree murder count from the theft counts, most of the aggravating circumstances apply only to the murder count, and the aggravating factors applicable to the theft counts are elements of the offense. The trial court specifically found that the theft offenses involved the taking of property with the expectation of pecuniary gain, and, therefore, considered the value of the property taken. The court also found as aggravating circumstances that the defendant inflicted death on his victim by use of a deadly weapon, the crime caused emotional and financial harm to the victim's family, there was a need to deter future conduct, and the defendant was a danger to society. The only mitigating factor the trial court found was the defendant's age.

 We view the record in a light most favorable to the trial court's decision. *State v. Rowe*, 116 Ariz. 283, 569 P.2d 225 (1977). It is better practice for the trial court to discuss aggravating and mitigating circumstances for each count separate-

ly. *State v. Gillies*, 142 Ariz. 564, 691 P.2d 655 (1984), *cert. denied*, 470 U.S. 1059, 105 S.Ct. 1775, 84 L.Ed.2d 834 (1985). The trial court's findings are sufficient, however, in this case. The trial court gave the defendant the presumptive sentence for the first-degree murder count, pursuant to the plea agreement. *See* A.R.S. § 13–703(A). When the presumptive sentence is imposed, no findings as to aggravation or mitigation are required. *State v. Bly*, 127 Ariz. 370, 373, 621 P.2d 279, 282 (1980). The aggravating factors the trial court found apply to the theft counts. *See* A.R.S. § 13–702(D). The trial court apparently found that the murder and theft were part of a continuing transaction and, therefore, aggravated the theft counts with the circumstances surrounding the murder. This was within the trial court's discretion. *See State v. Webb*, 164 Ariz. 348, 793 P.2d 105 (App.1990). The trial court aggravated the theft counts by considering the value of the property taken, not simply because the property was taken in the expectation of pecuniary gain. This was an appropriate consideration. *See* A.R.S. § 13–702(D)(3).

We find without merit the defendant's argument that the trial court improperly aggravated the theft counts by referring to elements of the crime. In addition, since the maximum terms of ten years runs concurrently with the life imprisonment sentence with no possibility of parole for twenty-five years, there is no prejudice to the defendant.

Defendant also alleges that the trial court erred in failing to consider as mitigating factors his lack of a criminal record or the fact that he was diagnosed as having a mental disorder. The trial court was not required to enumerate these as mitigating factors. *State v. Inglish*, 129 Ariz. 444, 447, 631 P.2d 1102, 1105 (App.1981). We assume the trial court considered all appropriate mitigating factors, and find no abuse of the trial court's discretion. *State v. Willcoxson*, 156 Ariz. 343, 347, 751 P.2d 1385, 1389 (App.1987); *State v. Winans*, 124 Ariz. 502, 605 P.2d 904 (App.1979).

The award of restitution for the travel expenses in the amount of $15,570.79 is hereby stricken, thereby reducing the award of restitution to $13,672.95. The reduced amount is substantially less than the maximum amount of $17,000 made prior to defendant's guilty pleas.

Assuming *arguendo* that the defendant did not waive his right to raise the restitution issue, the judgment and sentence as modified are affirmed nevertheless because defendant will be required to pay an amount less than the maximum estimated amounts. The judgments and sentences of the trial court are affirmed as modified.

EUBANK, P.J., concurs.

VOSS, Judge, dissenting.

I agree with the majority in all respects except their conclusions as regards restitution.

In August 1986, defendant, Jacob Edgar Wideman, age 16, and other high school students attended a summer sports camp in Maine. They, with a chaperon, left the camp to tour the western United States. On August 12th, the group checked into a motel in Flagstaff. The defendant and Eric Kane shared a room. In the early morning of the 13th, defendant fatally stabbed Eric. Upon being advised of the tragedy, Eric's family immediately traveled to Arizona, returning on several occasions to attend hearings and the trial. The family also sought mental health counseling.

The majority, in reviewing the trial court's restitution order, approved the trial court's award of restitution for the mental health expenses, but reversed the award for travel and lodging expenses incurred by the victim's family when they attended hearings and the trial. The majority holds that the travel expenses "do not flow" from the murder; that the expenses were an "indirect loss" because the victim's family was not "required to attend" any of the hearings. In contrast, the majority, without analysis, states that the "medical expenses for the counseling are directly attributable to the victim's death." As I conclude that such a result is both internally inconsistent and contrary to A.R.S. § 13–105(11), I respectfully dissent.

Many things necessarily occur as a result of being told that your child is dead, the victim of a violent crime. The sense of control vanishes and is replaced with overwhelming waves of emotion ranging from disbelief, denial and abysmal despair to rage. If anything naturally flows from receiving such news, it is the undeniable need to get "there." "It must be a mistake" must replay like a record on a broken changer. Even when the encroachment of reality requires that the record be changed, one constant remains—the futile compulsion to extract reason from insanity. To do this, the family must stay close. They must be "there." As naturally flowing from the defendant's act is the unsettling of the emotional balance of family members. Such a loss is one for which no one is prepared. The disorienting depth of the loss could only be described by those involved. The point is that both these losses, in a sense, "flow" from Eric's death. The decision to come to Arizona to be at their son's side, even in death, did not require reflection; it was made in a heartbeat. The decision to seek mental health counseling was in reality not a decision, but a necessity.

It is this parity which compels the travel, lodging and mental health expenses to be evaluated and treated in the same fashion. They are both compensable or neither is compensable.

The compelling nature of the facts here demonstrates the difficulty in determining restitution. It is my opinion that the line should be clearly drawn. The line should not allow extension beyond the direct and immediate damages caused by a criminal act, even if the application excludes as proper items for restitution such dramatic losses as appear here. To hold to the contrary will encroach upon civil liability and negative the protections provided by civil suits.

The trial court is required to order restitution for the full economic loss of a victim. A.R.S. § 13–603. The court, in ordering restitution, must consider all losses caused by the criminal offense. A.R.S. § 13–804. A.R.S. § 13–105(11) defines economic loss as:

> [A]ny loss incurred by a person as a result of the commission of an offense. Economic loss includes lost interest, lost earnings and other losses which would not have been incurred but for the offense. *Economic loss does not include losses incurred by the convicted person, damages for pain and suffering, punitive damages or consequential damages.* (Emphasis added.)

Black's Law Dictionary, 352 (5th ed.1979), defines consequential damages as:

> [S]uch damage, loss or injury as does not flow directly and immediately from the act of the party, but only from some of the consequences or results of such act.

This court has long noted the potential problems with restitution orders. In *State v. Reese*, 124 Ariz. 212, 603 P.2d 104 (App. 1979), we agreed with *People v. Richards*, 17 Cal.3d 614, 131 Cal.Rptr. 537, 552 P.2d 97 (1976), in which the California Supreme Court stated:

> Disposing of civil liability cannot be a function of restitution in a criminal case. To begin with, the criminal justice system is essentially incapable of determining that a defendant is in fact civilly liable, and if so, to what extent.... A party sued civilly has important due process rights, including appropriate pleadings, discovery, and a right to a trial by jury on the specific issues of liability and damages. The judge in the criminal trial should not be permitted to emasculate those rights by simply declaring his belief that the defendant owes a sum of money.

In *State v. Pearce*, 156 Ariz. 287, 751 P.2d 603 (App.1988), a criminal defendant pled guilty to theft resulting from his conversion of leased equipment. Division Two of this court, noting that our statute specifically excludes restitution for consequential damages, stated, "Pearce's theft or damaging of the equipment here resulted in loss of equipment or its value, but the resulting breach of the lease and lost profits are consequential damages resulting from Pearce's conversion. Such lost profits do not 'flow' from the acts to which Pearce pled guilty." The court reiterated that the purpose of restitution was not to displace

civil damages which may be recovered in a separate civil action.

I believe *Pearce* is dispositive and its logic compelling. Whereas reimbursement of victims of crime is properly motivated and should be actively pursued, it must be strictly defined. To accept anything less would violate the due process requirements of a civil proceeding. The restitution awarded by the trial court here included travel, lodging and mental health expenses. These expenditures, while arguably properly compensable in the civil action filed by Eric's survivors, did not "directly and immediately" flow from the act of defendant. They flowed as a consequence of defendant's crime. As such, I would disallow the travel, lodging and mental health expenses as inappropriate subjects for restitution.