871 P.2d 729

STATE of Arizona, Appellee–Respondent,

v.

Timothy Lawrence SASAK, Appellant–Petitioner.

Nos. 1 CA–CR 90–1265, 1 CA–CR 92–0173–PR and 1 CA–CR 92–0335–PR.

Court of Appeals of Arizona, Division 1, Department D.

Oct. 19, 1993.

Redesignated as Opinion and Publication Ordered Nov. 9, 1993.

Review Denied May 4, 1994.*

---

ty, is especially appropriate." 129 Ariz. at 73, 628 P.2d at 956.

* Feldman, C.J., and Martone, J., of the Supreme Court, voted to grant review.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Div., and Warren J. Granville, Monica D. Beerling, Asst. Attys. Gen., Phoenix, for appellee-respondent.

Michelle R. Hamilton, Phoenix, for appellant.

Timothy Lawrence Sasak, petitioner, in pro. per.

## OPINION

TOCI, Presiding Judge.

Defendant was indicted and charged with ten felony counts stemming from his operation of a mortgage banking company and numerous real estate limited partnerships. He executed a plea agreement in which he pled guilty to one count of theft and one count of illegally conducting an enterprise. In exchange, the state agreed that if defendant received a prison sentence "[t]he state [would] recommend that ... he should not receive consecutive terms." At sentencing, the state recommended an aggravated prison term of ten years on one count to be followed by a term of probation on the other. The court imposed aggravated, consecutive sentences of ten years on each count, for a total term of twenty years, the maximum permitted by statute.

Defendant now appeals from his convictions and the sentences imposed. In addition, he petitions for review of the denials of his motions for rehearing pursuant to Rule 32, Arizona Rules of Criminal Procedure. Because the issues raised in the petitions for post-conviction relief are identical to the issues raised in the appeal, we have consolidated the proceedings.

We must decide: (1) whether the court erred in finding that the state, by recommending a prison term and a term of probation, complied with the language of the plea agreement stating "[t]he state [would] recommend that [defendant] should not receive consecutive terms"; (2) whether the trial court abused its discretion in failing to consider mitigating factors in sentencing defendant; (3) whether defendant's plea was voluntarily and intelligently made in the absence of advice by the trial court regarding the potential consequences of a guilty plea on his out-of-state probation; (4) whether the trial court failed to adequately disclose a potential conflict of interest; and (5) whether the trial court abused its discretion by imposing a grossly disproportionate sentence.

We conclude that the court's finding of no breach of the plea agreement is not clearly erroneous. We also conclude that the trial court neither abused its discretion by failing to consider in mitigation defendant's remorse and the likelihood of financial recovery nor by imposing consecutive aggravated terms. Finally, we find no merit in defendant's arguments that the judge inadequately disclosed a prior employment relationship or that defendant was not fairly informed of the impact that his plea might have on an out-of-state probation. We, therefore, affirm defendant's convictions and sentences. We grant review but deny relief in the petitions for review.

## FACTS AND PROCEDURAL HISTORY

A grand jury indicted defendant on nine counts of fraudulent schemes and artifices, Ariz.Rev.Stat.Ann. ("A.R.S.") section 13–2310, each a class 2 felony, and one count of illegally conducting an enterprise, A.R.S. section 13–2312, a class 3 felony. The charges against defendant arose from his operation of Avanti Mortgage Corporation ("Avanti"), a mortgage banking firm. Between 1982 and 1988, Avanti established several limited partnerships, whose stated purposes were to make loans secured by real estate. Avanti obtained the funds for the loans by selling shares in the limited partnerships to over three thousand investors.

The evidence before the grand jury revealed that defendant paid unearned loan origination fees to a co-defendant who then "kicked back" approximately 94 percent of the fees to defendant. He also made improper loans to himself from partnership funds and failed to adequately secure certain loans, in violation of the partnership agreements.

Defendant entered into a plea agreement in which he agreed to plead guilty to one count of theft and one count of illegally conducting an enterprise, both class 3 felonies.

In exchange, the state agreed to dismiss the remaining counts of the indictment and further agreed to recommend that if defendant was sentenced to prison "he should not receive consecutive terms." The plea agreement also provided that defendant would pay restitution in the amount of $16,506,000, the total principal investment of all investors in the Avanti partnerships. The trial court accepted the plea agreement.

After defendant and state executed the plea agreement, conflicting recommendations were made to the presentence investigator. The prosecutor notified the presentence investigator of the state's recommendation that defendant be sentenced to probation on one count and an aggravated prison term on the other and urged him to recommend acceptance of the plea agreement. James C. Sell, the receiver in a civil action brought against defendant by the Arizona Attorney General, and Richard Witt, a spokesman for the investors in a class action suit against defendant, also wrote letters. They recommended to the presentence investigator that defendant receive maximum consecutive terms of imprisonment.

The trial court held a lengthy mitigation hearing. At the hearing, the prosecutor did not expressly state that if defendant were sentenced to prison, "he [should] not receive consecutive terms." Nevertheless, the prosecutor repeated his recommendation of an aggravated prison term to be followed by a term of probation. Defendant's counsel, however, did not object that the state had failed to make the agreed recommendation. Instead, counsel argued that the state's failure to object to the presentence report, which recommended a mitigated sentence of 3.75 years followed by 5 years on probation, precluded the state from arguing for an aggravated sentence. The trial court overruled the objection, remarking that the state had the right to request whatever sentence it felt was appropriate. The trial court then found a number of aggravating circumstances and imposed maximum ten-year sentences on each count, to be served consecutively. Defendant filed a timely appeal.

We stayed the appeal during the pendency of a petition for post-conviction relief. The sentencing judge, the Honorable Kenneth L. Fields, summarily dismissed three of the five issues raised in the petition. Those issues were defendant's allegations that the trial court failed to consider mitigating factors or to advise defendant of the consequence of his plea and that the court imposed a disproportionately severe sentence. Judge Fields granted an evidentiary hearing on the claim that the state breached the plea agreement, but at the conclusion of the hearing, he denied defendant's claim. The claim of a conflict of interest on the part of Judge Fields was transferred to the Honorable Ronald S. Reinstein, who summarily dismissed the claim without a hearing.

Defendant then filed a motion for rehearing with each judge. After both judges denied the motions, defendant filed petitions for review in this court.

## DISCUSSION

### 1. Violation Of The Plea Agreement

Defendant argues that the state breached the plea agreement in three ways: (1) by failing to make the promised sentencing recommendation; (2) by failing to remain silent aside from the promised recommendation; and (3) by allowing Mr. Sells and Mr. Witt to recommend maximum consecutive prison terms. Based on our review of the evidentiary hearing, we conclude that the court's findings of no breach were not clearly erroneous.

The second paragraph of the plea agreement signed by the parties provides:

Sentence is left to the discretion of the Court. *The State will recommend that, if Mr. Sasak is sentenced to prison, he should not receive consecutive terms.*

(Emphasis added.) At the mitigation hearing preceding sentencing, the prosecutor said:

The reason the state has not asked and will represent *that he be given an aggravated prison term of ten years on Count I and not on both counts* is, ... to help the receiver find assets, to help in civil suits that are going to be going on for years, because the probation office can better control his conduct after he gets out of

prison and better monitor the restitution. Were the Court to sentence Mr. Sasak on both counts at this point, we would loose [sic] our control over Mr. Sasak. *So for that reason the state would ask the Court not [sic] to sentence Mr. Sasak to ten years, an aggravated term on one count, and impose a probation term on the second count to run again after the prison term.* Such a sentence is lawful in Arizona. Because of that, it could maintain control of supervision over Mr. Sasak for a longer period of time. The state would ask that sentence ... be imposed.

(Emphasis added.)

Defendant had opportunities to object on grounds that the prosecutor's recommendation was inconsistent with the plea agreement both before and during the hearing, but he did not do so. Defendant thereby waived the right to raise the alleged error for the first time in his appeal. *State v. Georgeoff,* 163 Ariz. 434, 436–37, 788 P.2d 1185, 1187–88 (1990) (breach of plea agreement not fundamental error that can be originally raised on appeal). Only because the state failed to plead and prove preclusion in the post-conviction proceedings can defendant now raise the issue of breach of the plea agreement. Ariz.R.Crim.P. 32.2; *State v. Thompson,* 120 Ariz. 202, 203, 584 P.2d 1193, 1194 (App. 1978).

■ We begin with the proposition that when the trial court holds an evidentiary hearing, our review of the trial court's findings of fact is limited to a determination of whether those findings are clearly erroneous. *State v. Cuffle,* 171 Ariz. 49, 51, 828 P.2d 773, 775 (1992). In reviewing a decision on a hearing for post-conviction relief, we must view the facts in the light most favorable to sustaining the lower court's ruling, and we must resolve all reasonable inferences against the defendant. *State v. Atwood,* 171 Ariz. 576, 596, 832 P.2d 593, 613 (1992). It is the duty of the trial court to resolve any conflicts in the evidence, and where the trial court's ruling is based on substantial evidence, this court will affirm. *Id.* at 597, 832 P.2d at 614. Evidence is not insubstantial merely because testimony is conflicting or reasonable persons may draw different con-

clusions from the evidence. *State v. Toney,* 113 Ariz. 404, 408, 555 P.2d 650, 654 (1976). Based on the record before the trial court in the post-conviction proceedings, substantial evidence supports the trial court's finding that the state complied with the plea agreement.

■ The plea agreement provides "[t]he state will recommend that, if Mr. Sasak is sentenced to prison, he should not receive consecutive terms." Although this language is subject to different interpretations, the most obvious meaning is that "the state will recommend that, if Mr. Sasak is sentenced to prison, he should not receive consecutive terms of *imprisonment.*" The prosecutor's recommendation that defendant "be given an aggravated prison term of ten years on Count I and not on both counts" is evidence that the state interpreted the plea agreement as a prohibition against recommending consecutive terms of imprisonment. The trial court could reasonably have found that the only sentence the state was precluded from recommending was that of *consecutive* prison terms and that consequently the state complied with the plea agreement by recommending prison on one count and probation on the other.

But even if the state's recommendation was a technical violation of the plea agreement, defendant was required to prove the allegations of the petition for post-conviction relief by a preponderance of the evidence. Ariz.R.Crim.P. 32.8(c). In *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971), the United States Supreme Court held that if a defendant's plea rests in any significant degree on the state's promise, that promise must be fulfilled. Defendant, therefore, had to prove, by a preponderance, that his guilty plea was induced by the state's promise to recommend against consecutive terms and not by other considerations. See *State v. Chavez,* 130 Ariz. 438, 439, 636 P.2d 1220, 1221 (1981) (defendant who alleges violation of a plea agreement bears the burden of proof on the issue).

■ In *Mabry v. Johnson,* 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984), the

Court clarified *Santobello.* The Court stated:

> [O]nly when it develops that the defendant was not fairly apprised of its consequences can his plea be challenged under the Due Process Clause. *Santobello v. New York* ... illustrates [this] point.... [W]hen the prosecution breaches its promise with respect to an executed plea agreement, the defendant pleads guilty on a false premise, and hence his conviction cannot stand....

*Id.* at 509, 104 S.Ct. at 2547; *accord Georgeoff,* 163 Ariz. at 436–37, 788 P.2d at 1187–88. In *Mabry,* the defendant tried to enforce a plea offer withdrawn by the prosecution after his acceptance; the defendant ultimately accepted a much less favorable offer and pled guilty. The Court found no due process violation in the guilty plea to the less favorable offer because the defendant knew the consequences that would flow from the plea, and the plea "rested on no 'unfulfilled promise.'" *Mabry,* 467 U.S. at 510, 104 S.Ct. at 2548. Thus, *Santobello,* as clarified by *Mabry,* stands for the proposition that a breach of a plea agreement is reversible error only if the defendant actually entered a plea of guilty in reliance upon the promise in the plea agreement.

■ Arizona case law supports the *Santobello–Mabry* rationale. In *Georgeoff,* our supreme court held that the breach of a plea agreement by the state did not constitute fundamental error. 163 Ariz. at 435–36, 788 P.2d at 1186–87. Quoting *Mabry,* the *Georgeoff* court said "a plea bargain standing alone has no constitutional significance ... it is the ensuing guilty plea that implicates the constitution." *Id.* at 436–37, 788 P.2d at 1187–88. In an analogous situation, our supreme court has held that before a defendant can withdraw from a plea bargain because of the trial court's failure to advise defendant of the amount of restitution required of him, "we determine whether restitution was relevant to defendant's decision to plead." *State v. Adams,* 159 Ariz. 168, 171, 765 P.2d 992, 995 (1988).

Neither does *State v. Ross,* 166 Ariz. 579, 804 P.2d 112 (App.1991), require a different conclusion. There, the issue of whether the defendant relied upon the state's promises was never raised; we simply assumed that the defendant was "[i]nduced to plead guilty by promises of the state." *Id.* at 584, 804 P.2d at 117. Thus, we concluded that the prosecutor's opposition to defense counsel's statements in mitigation violated the terms of the plea agreement and was reversible error.

Unlike *Santobello,* where the Court found that the terms of the plea agreement induced a plea of guilty, the record here is devoid of any evidence that defendant's plea rested in any significant degree upon the state's promise to recommend against consecutive terms. Our review of the evidentiary hearing reveals that defendant's evidence attempted to show either that Mr. Sells and Mr. Witt acted as state agents and misrepresented to defendant that they would favorably influence the state's sentencing recommendation or that the state agreed not to recommend an *aggravated* sentence. Defendant never made any effort to establish, by affidavit or otherwise, that he would not have entered a guilty plea had it not been for the state's specific promise in the plea agreement to recommend against consecutive terms. Consequently, on this record, the state's promise to recommend against consecutive terms cannot be said to be a material inducement for the plea.

The dissent concludes "as a matter of law ... the stipulation in question was a material inducement for the guilty plea and that the plea rested upon the stipulation to a significant degree." We disagree for several reasons. First, in *Georgeoff,* our supreme court held that the breach of a plea agreement is not fundamental error. The *Georgeoff* court also cited *Mabry* for the proposition that a plea bargain by itself has no constitutional significance. If a plea bargain standing alone has no constitutional significance and the breach of a plea bargain is not error in absence of an objection, the breach of a plea agreement cannot be error as a "matter of law."

Second, as we discuss above, the record contains no evidence that supports the argument that defendant entered the plea in reliance upon the state's promise to recommend against consecutive sentences. In all, defendant faced the possibility of a minimum sentence of 51 years, a presumptive sentence of

68 years, and a maximum sentence of 136 years in prison if convicted on all ten counts.[1] Defendant signed a plea agreement in which he agreed to plead guilty to one count of theft and one count of illegally conducting an enterprise, both class 3 felonies, in consideration of the state's agreement to dismiss the remaining seven felony counts. This reduced defendant's possible prison sentence to a 7.5–year minimum, a 10–year presumptive and a 20–year maximum term. The record contains substantial evidence from which the trial court could have found that the material inducement to defendant's plea was the reduction in possible prison time, not the state's promise to recommend against consecutive sentences.[2]

Furthermore, defendant made no objection that the prosecutor's recommendation of a term of imprisonment followed by probation at sentencing violated the terms of the plea agreement. We have previously observed that defendant's failure to object could not, in the absence of the state's pleading of preclusion, constitute a waiver of the right to raise the issue of breach of the plea agreement in a Rule 32 proceeding. Nevertheless, had defendant believed that the recommendation made by the state violated the plea agreement, he could have objected immediately and moved to withdraw from the plea agreement. The trial court could have found that defendant's failure to take this action refuted his argument that his plea was entered in reliance on the language at issue in the plea agreement.

After the court sentenced him to two ten-year terms, defendant was understandably unhappy, but he never demonstrated that he would not have pleaded but for the prosecutor's agreement to recommend against consecutive terms. Defense counsel's affidavit

prepared in connection with the petition for post-conviction relief merely states he had the "impression" that the state was not interested in significant prison or jail time, and he thought that the prosecutor would recommend *concurrent* prison sentences. Although the plea agreement clearly states that the only recommendation the prosecution was to make was against *consecutive* terms, defendant's attorney claims he was surprised that the prosecutor recommended the maximum sentence on *one* count. According to defendant's attorney, he "felt that Mr. Sasak had been wrongfully induced to plead."

Similarly, defendant's affidavit states he "was led to believe" that the state was not interested in a prison term, would offer no evidence in aggravation, and would take no position on sentencing other than to ask that if the court were inclined to impose prison, the counts run concurrently. Defendant's affidavit, however, does not claim that in entering his plea he relied upon the state's recommendation that he not receive consecutive terms. Under these circumstances, the trial court's decision is not clearly erroneous.

■ Defendant's remaining arguments lack merit as well. He contends the plea agreement required the state to remain silent at sentencing apart from the recommendation against consecutive terms. The agreement does not mandate silence by its express terms, but defendant argues silence is compelled by the wording that "sentence is left to the discretion of the court." We agree with the trial court that this provision does not require the state to refrain from taking a position on an appropriate sentence. "The parties may negotiate concerning, and reach an agreement on, any aspect of the disposition of [a] case." Ariz.R.Crim.P. 17.4(a). The agreement simply declares that the par-

---

1. A grand jury indicted defendant on nine counts of fraudulent schemes and artifices, each a class 2 felony, and one count of illegally conducting an enterprise, a class 3 felony. Each class 2 felony count carries a 5.25–year minimum, a 7–year presumptive, and a 14–year maximum sentence. The class 3 felony carries a 3.75–year minimum, a 5–year presumptive and a 10–year maximum sentence.

2. Our conclusion on this point is buttressed by the proceedings at the change-of-plea hearing.

At the hearing, the trial court asked defendant if he understood "that even though the state may recommend that [if you are sent to prison you should not receive consecutive terms], I may decide I want to give 10 years on each count concurrent or run consecutive for 20 years; I have that discretion under the agreement." Defendant replied, "Yes." Despite this advice, defendant changed his plea, thus obviously relying on something other than the prosecutor's agreement to recommend against consecutive terms.

ties have not agreed to any limitation on the trial court's discretion in sentencing. *See State v. Rodriguez,* 117 Ariz. 70, 72, 570 P.2d 1083, 1085 (App.1977) (phrase "no agreement concerning sentence" did not require state to remain silent).

■ Nor does the fact that the agreement provides that the state will make a specific recommendation against consecutive terms of imprisonment require the state to remain silent on other aspects of defendant's sentence. For example, the state could urge the court to impose an aggravated sentence without necessarily violating the terms of the plea agreement. Furthermore, the trial court heard evidence of the conduct and intent of the parties during the plea negotiations and the sentencing; its finding of no agreement to remain silent is supported by substantial evidence.

Defendant's final argument is that both Mr. Sells and Mr. Witt were state agents and thus violated the plea agreement by recommending defendant receive maximum consecutive sentences. The evidence before the trial court, however, fully supports the court's ruling that neither Mr. Sells nor Mr. Witt were agents of the state.

### 2. Trial Court Did Not Abuse Discretion in Sentencing

Defendant contends the trial court erred by failing to consider or address his evidence offered in mitigation. We view the record in the light most favorable to sustaining the trial court's decision. *State v. Wideman,* 165 Ariz. 364, 369, 798 P.2d 1373, 1378 (App. 1990). "[W]e will not disturb a sentence within the statutory range absent an abuse of discretion." *State v. Calderon,* 171 Ariz. 12, 13, 827 P.2d 473, 474 (App.1991). The court may abuse its discretion by failing to conduct an investigation into the relevant factors before pronouncing sentence. *Id.*

Here, however, the sentencing judge stated that he had read all of the letters, recommendations from various parties, and the presentence report and that he had considered all of the testimony in arriving at sentence. Although the court did not enumerate any mitigating factors, "we assume the trial court considered all appropriate mitigating factors." *Wideman,* 165 Ariz. at 370, 798 P.2d at 1379.

Defendant also contends that the judge failed to take into account his remorse. The judge, however, simply may have doubted defendant's sincerity. He was in a far better position than this court to evaluate defendant's demeanor. *See Calderon,* 171 Ariz. at 14, 827 P.2d at 475. Similarly, the trial judge heard all of the evidence and testimony; his conclusion that investors would not likely receive substantial recovery of their money is not an abuse of discretion. Although defendant argued the likelihood of recovery was very high, the court may have concluded to the contrary. Defendant was ordered to pay restitution at the rate of $800 per month after defendant's release from prison. The payments do not begin until defendant's release from prison. At the rate of $800 per month, the $16.5 million in restitution cannot be repaid.

### 3. Failure to Advise of Effect of Plea on Out-of-State Probation

■ Two weeks prior to the change-of-plea hearing in this matter, defendant was placed on probation in Nevada for a federal offense. Defendant asserts that his plea was not voluntarily and intelligently made because the trial court failed to advise him of the possible impact of the plea on his federal probationary status. We disagree. The trial court is not required to inform a defendant of consequences of which defendant is made aware when placed on probation. *State v. Harris,* 116 Ariz. 543, 545, 570 P.2d 485, 487 (1977). The record on appeal contains no factual support for defendant's claim that counsel did not inform defendant of the consequences of the guilty plea on his probationary status or that he was not aware of them from another source, such as his probation officer. Under such circumstances, we are unable to review this issue on appeal. *See State v. Vera,* 159 Ariz. 237, 239, 766 P.2d 110, 112 (App.1988) (where no evidence in record that counsel did not advise defendant of the consequences of possible deportation, issue is not reviewable on appeal).

As for the post-conviction relief proceedings, defendant never alleged or presented evidence to the trial court that his plea did or could have affected his Nevada probationary status. Consequently, he did not present a colorable claim for relief. *See State v. Crowder*, 155 Ariz. 477, 481, 747 P.2d 1176, 1180 (1987) (defendant must show missing information actually relevant to decision-making process; where not "of the essence" of the agreement, plea will not be vacated); *State v. Lemieux*, 137 Ariz. 143, 147, 669 P.2d 121, 125 (App.1983). The trial court did not abuse its discretion in summarily dismissing this claim.

### 4. Trial Court's Failure to Disclose Conflict

 Defendant also contends that his plea and related proceedings were defective because the trial court failed to reveal a potential conflict of interest. The transcript of the mitigation hearing shows that Judge Fields stated in open court the following:

> One more thing, this is probably common knowledge among the attorneys, it should be rather clear for the record, Mr. Keilp represents Mr. Sell, the receiver, Mr. Drake, who represented Mr. Sasak, and *they* were all in the United States Attorney's Office together, assistant U.S. attorneys from probably 1975 to 1982, '83. All the lawyers know that. I will disclose that for the record. If anyone has a problem, they should bring it up before I do the sentencing.

(Emphasis supplied.) Defendant argues that this disclosure did not adequately inform him that Judge Fields had actually worked at the United States Attorney's Office with Mr. Keilp and Mr. Drake, and that this prior association presents a question of judicial bias.

Judge Reinstein summarily dismissed this claim with a finding that Judge Fields had made a disclosure. He concluded that in context, the word "they" was a mistranscription of the word "we."[3] Judge Reinstein also found that defendant failed to show any

prejudice and that neither the Code of Judicial Conduct nor the holding in *State v. Superior Court*, 155 Ariz. 560, 748 P.2d 1184 (1987), required disclosure of the type of past association involved in this case.

The American Bar Association's 1972 Code of Judicial Conduct has been adopted by the Arizona Supreme Court. *See* Supreme Court Rules, Code of Judicial Conduct 81 (Supp.1992). To preserve the integrity and independency of the judiciary, these rules govern the conduct of all Arizona judges. Canon 3(C) provides, in pertinent part:

> C. *Disqualification.*
>
> (1) A judge should disqualify himself at a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:
>
> . . . .
>
> (b) he knows that he served as a lawyer in the matter in controversy, or he knows that a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter. . . .

In *State v. Superior Court*, the court held that the impartiality of a judge may reasonably be questioned when adversarial proceedings in a criminal case are assigned to a judge who was a member of the staff of the prosecuting attorney at the time prosecution commenced. 155 Ariz. at 562, 748 P.2d at 1186.

We agree with Judge Reinstein's analysis. Both of these authorities apply to situations where a judge's previous position was held contemporaneously with a former associate's representation of a party to the present litigation. That is not the case here. Although Judge Fields worked at the same federal office with Mr. Drake and Mr. Keilp, it was long before their involvement in the present case. ·

Defendant has failed to show any justifiable reason that would have required Judge Fields to disqualify himself. We conclude that Judge Reinstein did not abuse his dis-

---

**3.** The state filed an unopposed motion to correct the record to show "we" in lieu of "they" based

on an affidavit of the court reporter.

cretion in summarily dismissing this issue in the Rule 32 proceeding. For the same reason, no basis exists for reversal on appeal.

### 5. Sentences Are Not Unconstitutionally Excessive

■ Finally, defendant relies on *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), to argue the sentences imposed were disproportionately severe and constitute cruel and unusual punishment. A plurality of the United States Supreme Court has questioned the vitality of the *Solem* analysis of proportionality in non-capital cases in *Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), but our supreme court has concluded that *Solem* survives *Harmelin*. *State v. Bartlett*, 171 Ariz. 302, 305, 830 P.2d 823, 826, *cert. denied*, —— U.S. ——, 113 S.Ct. 511, 121 L.Ed.2d 445 (1992).

Even under a proportionality review, however, we do not find defendant's sentences to be excessive under the circumstances. The critical inquiry is whether the sentence imposed is grossly disproportionate to the gravity of the offense. *Id.* at 306–07, 830 P.2d at 827–29. The harm to the victims and society as well as the culpability of the defendant are two relevant factors in determining whether a sentence is grossly disproportionate. *Id.*, at 306, 830 P.2d at 827. Here, the sentencing court found that neither factor minimized the severity of the crimes: defendant conducted a nation-wide operation in which thousands of investors lost money. Defendant was ordered to pay restitution in the amount of $16.5 million; the public confidence in the securities markets was shaken, and the markets themselves were damaged by defendant's conduct. Defendant was a well-educated professional who refused to acknowledge knowing participation in the fraudulent scheme and expressed no genuine remorse for the injury inflicted on his victims. The court adequately considered both the facts of the crimes and of the criminal, but we do not believe either demonstrate the type of gross disproportionality found in *Bartlett*.

Our supreme court has interpreted *Harmelin* to require inter- and intra-jurisdictional analysis only when "a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Harmelin*, 501 U.S. at 1005, 111 S.Ct. at 2707. We do not find the inference to exist, nor do we find any abuse of discretion on the part of the sentencing court.

### CONCLUSION

In conclusion, we find that the defendant failed to prove the allegations of the petition for post-conviction relief by a preponderance of the evidence. Ariz.R.Crim.P. 32.8(c). The evidence does not support defendant's claim that he was wrongfully induced to plead guilty by the state's promise nor that the state otherwise violated the plea agreement.

We find the remaining arguments without merit, and therefore, grant review but deny relief. Pursuant to A.R.S. section 13–4035, we have searched the record for fundamental error and have found none. We affirm the convictions and sentences imposed below.

CLABORNE, J., concurs.

DANN, Judge,** dissenting:

I respectfully dissent. This is a clear-cut case of the State violating a material term of a plea agreement. The agreement contained two terms regarding sentence. They are set forth verbatim in the majority's opinion. The pertinent term required that the prosecutor "recommend that, if Mr. Sasak is sentenced to prison, he should not receive consecutive terms." The record is clear that the prosecution failed to make any such recommendation, either to the probation department or to the sentencing judge. Sasak was sentenced to the maximum twenty-year term in prison, two consecutive ten-year sentences. Thus, had the State performed its part of the agreement, and had the judge been persuaded by its recommendation, the Defendant's sentence would have been ten years in prison

---

** The Honorable B. MICHAEL DANN, Judge of the Maricopa County Superior Court, was authorized to participate in this matter by the Chief

Justice of the Arizona Supreme Court, pursuant to Ariz. Const. art. 6, § 31.

at the most, or one half of the sentence he received.

After finding that the issue is properly raised under rule 32, the majority first concludes that the record supports the sentencing judge's finding that the State did in fact comply with the plea agreement. The record does not contain any basis for a finding that the State made the recommendation required of it. The only conclusion that one can possibly draw is that the State failed, orally or in writing, to recommend prior to sentencing that Sasak not receive consecutive prison sentences. Instead of making the sentencing recommendation required of him, the prosecutor recommended a form of consecutive sentences—a prison term on one count followed by consecutive probation on the other.

Even assuming that the prosecutor's statements do not violate the plea agreement term regarding consecutive sentences, the Sell's recommendation did. Mr. Sell, whom the court appointed as receiver of Defendant's business in a civil proceeding brought by the State, wrote the probation department recommending that the court impose the maximum prison sentences available and that they be served consecutively. Whether or not a legal agent of the State, the prosecutor's office was closely enough associated with Mr. Sell that there was a danger the court would associate Sell's remarks with the State. The Sell's recommendation, therefore, made it all the more important that the prosecutor recommend against consecutive prison terms. The prosecutor, however, did not disabuse the court of the notion of consecutive sentences, and, therefore, breached the plea agreement.

The majority relies upon *Mabry v. Johnson* and *State v. Georgeoff* to deny Sasak relief. These cases do not control here. In *Mabry* the question was whether an accepted plea offer may be withdrawn by the prosecution prior to any guilty plea being entered. The Supreme Court answered in the affirmative, holding that due process considerations are implicated only where, as here, a guilty plea occurs pursuant to a plea agreement. *Mabry v. Johnson,* 467 U.S. 504, 507, 104 S.Ct. 2543, 2546, 81 L.Ed.2d 437 (1984). Nor is *Georgeoff* relevant to this case. There, the

Arizona Supreme Court held that by failing to object at sentencing concerning what appeared to be a rather clear breach of a plea agreement term regarding sentencing, the defendant waived his right to raise the issue on appeal. *State v. Georgeoff,* 163 Ariz. 434, 437, 788 P.2d 1185, 1188 (1990). Furthermore, although the breach in *Georgeoff* did not rise to fundamental error review, the court noted that post-conviction relief provided an appropriate forum for relief. *Id.*

This case is controlled not by *Mabry* and *Georgeoff,* but by *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) and cases such as *State v. Ross,* 166 Ariz. 579, 804 P.2d 112 (App.1990). *Santobello,* the seminal case on the subject of breach of plea agreement terms by the prosecution, held that due process requires remand for specific performance of the agreement before a new sentencing judge or for an opportunity for the defendant to withdraw from his plea when the State breaches material portions of the plea agreement's stipulations regarding sentencing. *Santobello,* 404 U.S. at 262–63, 92 S.Ct. at 498–99; *see also Ross,* 166 Ariz. at 584–85, 804 P.2d at 117–18 (relying on *Santobello,* vacating for re-sentencing).

*Santobello* also provides the standard to be applied in determining whether a sentence and guilty plea should be vacated following such a breach. According to the Court, a plea can not stand where it "rests in any significant degree" upon the promise breached or where the promise was "part of the inducement or consideration" for the plea. *Santobello,* 404 U.S. at 262, 92 S.Ct. at 499. The majority has not clearly identified in this case what standard it applies in concluding that Sasak failed to prove that the consecutive sentence provision was of consequence to him. On the one hand the majority opinion suggests that the Defendant need only prove that he pled "in reliance" on the promise or that it was "an inducement" to his plea. The majority also refers to the *Santobello* test, that is, he must prove that the guilty plea "rests in any significant degree" upon the stipulation. Majority Opinion at 734. However, the majority also appear to hold defendant to too high a standard when they con-

clude that Sasak is not entitled to relief because he failed to demonstrate that his plea "was induced by" the State's promise and that "but for" the provision he would not have pled guilty. Majority Opinion at 734–735. Clearly, application of any standard or test more stringent than that announced in *Santobello* is improper.

I would conclude as a matter of law that the stipulation in question was a material inducement for the guilty plea and that the plea rested upon the stipulation to a significant degree. This record, including the evidence received at the Rule 32 hearing, does not support any other conclusion.

The State's promise to recommend concurrent prison terms should Sasak be sentenced to prison was the sole affirmative agreement between the State and the defendant regarding sentencing. If the State had made such a recommendation so that the trial judge would have been aware of the State's position prior to sentencing, one cannot assume that the recommendation would not have influenced the outcome. The cases do not permit such an assumption. *Santobello*, 404 U.S. at 262, 92 S.Ct. at 498; *Ross*, 166 Ariz. at 585, 804 P.2d at 118. If the sentencing judge had been persuaded by the State's recommendation, the defendant might have received a prison sentence half as long as the twenty-year sentence actually imposed.

As this court noted in *Ross:*

A prosecutor commits reversible error when he violates his plea agreement with the defendant. Breaking a promise which induced the defendant to plead guilty rather than exercise his right to a jury trial undercuts the essential fairness and integrity of our system of justice. The defendant therefore need not show actual prejudice. It is an essential component of fundamental fairness that, when a defendant and the state enter into a particular agreement, the state must comply with its promises.

166 Ariz. at 584, 804 P.2d at 117 (citations omitted).

To preserve the essential fairness and integrity of the plea bargaining and sentencing components of our criminal justice system,

this sentence should not stand. In accordance with *Santobello* and *Ross*, the sentence should be vacated and the case remanded for specific performance of the plea agreement before a new judge, or the defendant should be given an opportunity to withdraw from the breached agreement.