NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Respondent*,

*v.*

ISAAC VICERA-POPOCA, *Petitioner*.

No. 1 CA-CR 24-0390 PRPC

FILED 07-24-2025

Petition for Review from the Superior Court in Maricopa County
Nos. CR2006-007252-002, CR2006-007850-001,
CR2006-009592-001, CR2006-011304-002, CR2006-030809-001,
CR2006-121757-002, CR2006-124041-001, CR2007-005420-001,
CR2007-005476-001, CR2008-006137-001

The Honorable David W. Garbarino, Judge
The Honorable Paul J. McMurdie, Judge *Retired*

**REVIEW GRANTED; RELIEF DENIED**

COUNSEL

Ballecer & Segal, LLP
By Natalee Segal, Nicholas Bustamante
*Counsel for Petitioner*

Maricopa County Attorney's Office, Phoenix
By Jason B. Easterday
*Counsel for Respondent*

## MEMORANDUM DECISION

Judge D. Steven Williams delivered the Court's decision, in which Presiding Judge Jennifer M. Perkins and Judge Andrew M. Jacobs joined.

**W I L L I A M S**, Judge:

¶1        Isaac Vicera-Popoca petitions this court to review the superior court's order dismissing his petition for post-conviction relief ("PCR"), filed under Arizona Rule of Criminal Procedure ("Rule") 32. For the following reasons, we grant review but deny relief.

### FACTUAL AND PROCEDURAL BACKGROUND

¶2        Based on evidence gathered by law enforcement officers investigating a series of "nighttime burglaries at strip malls," a "grand jury handed up nine indictments" charging Popoca with numerous counts of burglary and theft, as well as criminal damage and possession of burglary tools. *State v. Popoca*, 1 CA-CR 08-0950, 2011 WL 552884, at *1–2, ¶¶ 2, 7 (Ariz. App. Feb. 17, 2011) (mem. decision).[1] Following a trial on the charges in the consolidated indictments ("the first trial"), a jury found Popoca guilty on most counts and the trial court sentenced him "to concurrent and consecutive terms of imprisonment totaling thirty-eight years." *Id.* at *2, ¶ 8.

¶3        Less than two weeks before the first trial began, a "grand jury handed up another indictment charging Popoca" with additional counts of burglary and theft, as well as participation in a criminal syndicate and assisting a criminal syndicate. *Id.* at ¶ 9. After the first trial, the State extended Popoca a plea offer to resolve all remaining charges, which he rejected. Following a trial on the charges in the tenth indictment ("the second trial"), a jury found Popoca guilty on most of the counts and the "trial court sentenced Popoca on these convictions as a repetitive offender

---

[1]        For ease of reference, we cite only to the lead cause number for these consolidated appeals: 1 CA-CR 08-0950; 1 CA-CR 08-0951; 1 CA-CR 08-0952; 1 CA-CR 08-0953; 1 CA-CR 08-0954; 1 CA-CR 08-0955; 1 CA-CR 08-0956; 1 CA-CR 08-0957; 1 CA-CR 08-1006; and 1 CA-CR 09-0063.

to concurrent and consecutive terms of imprisonment totaling forty-six years." *Id.*

**¶4**        Popoca separately appealed the convictions and sentences arising out of each indictment. *Id.* at *3, ¶ 10. This court consolidated the ten appeals "for appellate disposition" and affirmed the convictions and sentences. *Id.* at *3, 8, ¶¶ 10, 30.

**¶5**        After the appeal, Popoca timely petitioned the superior court for PCR, raising numerous claims, including ineffective assistance of counsel. The court summarily dismissed Popoca's PCR petition. On review, this court denied relief. The supreme court then vacated both the superior court's order and this court's memorandum decision in part, remanding the matter to the superior court to:

> (1) conduct an evidentiary hearing to determine if [Popoca] can establish his ineffective assistance of counsel claim arising out of the offer put on the record at the August 5, 2008 hearing; and
>
> (2) [] determine whether [Popoca] should be able to supplement his PCR petition as to this issue only.

**¶6**        On remand, the superior court held a two-day evidentiary hearing. Based on the evidence presented, and its independent review of the relevant trial transcripts, the court dismissed Popoca's PCR petition.

**¶7**        This petition for review followed. We have jurisdiction under A.R.S. §§ 13-4031, -4239(C), and Rule 32.16(a).

## DISCUSSION

**¶8**        Popoca contends he was denied effective assistance of counsel because, among other things, his trial attorney advised him to reject the State's plea offer, which would have resolved all the charges prosecuted in the second trial without increasing the length of his sentence. Had trial counsel fully explained the benefits of the offer and adequately informed him of the sentence exposure after the second trial, Popoca claims he would have accepted the plea offer.

**¶9**        Absent an abuse of discretion or error of law, we will not disturb a superior court's ruling on a petition for post-conviction relief. *State v. Gutierrez*, 229 Ariz. 573, 577, ¶ 19 (2012). It is the petitioner's burden to

3

show that the court abused its discretion. *See State v. Poblete*, 227 Ariz. 537, 538, ¶ 1 (App. 2011).

**¶10**　　To prove ineffective assistance of counsel, a petitioner must show that counsel's performance fell below objectively reasonable standards and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *see also State v. Nash*, 143 Ariz. 392, 397–98 (1985). Specific to plea negotiations, a petitioner must prove that counsel "either (1) gave erroneous advice or (2) failed to give information necessary to allow the petitioner to make an informed decision whether to accept the plea." *State v. Donald*, 198 Ariz. 406, 413, ¶ 16 (App. 2000). To establish prejudice, the petitioner "must show a reasonable probability that, absent his attorney's deficient advice, he would have accepted the plea offer" and not proceeded to trial. *Id.* at 414, ¶ 20 (quotation and citation omitted). Because "objective evidence" of "motivation" will "understandably be sparse," a petitioner "may inferentially show prejudice by establishing a serious negative consequence, such as receipt of a substantially longer or harsher sentence than would have been imposed as a result of a plea." *Id.* at ¶ 21. A petitioner "might also show that the risks inherent in proceeding to trial so substantially outweighed the benefits of the plea that proceeding to trial was an unreasonable risk." *Id.*

**¶11**　　While a defendant has no constitutional right to a plea offer, "once the State engages in plea bargaining, the defendant has a Sixth Amendment right to be adequately informed of the consequences before deciding whether to accept or reject the offer." *Id.* at 413, ¶ 14. "To ensure that a defendant is adequately advised, [d]efense counsel has a duty to communicate . . . not only the terms of the plea bargain offer, but also the relative merits of the offer compared to the defendant's chances at trial." *Id.* at 411, ¶ 9 (internal quotation and citation omitted). "[I]t is the attorney, not the client, who is particularly qualified to make an informed evaluation of a proffered plea bargain." *Id.* at 412, ¶ 12 (internal quotation and citation omitted).

**¶12**　　On August 5, 2008, the day after sentencing on the convictions from the first trial, the trial court held a pretrial conference on the second trial. Just before the hearing, the prosecutor moved "to determine counsel," alerting the court to a potential "*Donald* issue." As outlined in the motion and explained at the hearing, the prosecutor sought a waiver from Popoca as to any ineffective assistance of counsel claim, asserting that trial counsel had neither adequately prepared for the second trial nor "clearly advis[ed]" Popoca of his sentence exposure should he proceed to trial. To support the latter contention, the trial prosecutor recounted that at the conclusion of the

first trial, he informed trial counsel that: (1) Popoca faced "a significant sentence and possible consecutive prison sentences," and trial counsel "denied" both possibilities; and (2) if a jury convicted Popoca at the second trial, the trial court could sentence Popoca to consecutive prison terms, and trial counsel "denied that would happen" for mere "property crimes."

¶13        Without directly addressing the prosecutor's specific claims, trial counsel simply stated that the trial court had sufficiently advised Popoca "what he [faced] if convicted." In response, the prosecutor acknowledged that the court had, in fact, advised Popoca of his potential sentence exposure before the first trial, but, he explained, the sentencing calculus had changed since the first trial's jury convicted Popoca of multiple felonies. Trial counsel again assured the court:

> Mr. Popoca is well aware of the sentence which he faces on the new case. He's well aware that there is a great many years that he faces if convicted on any of these counts. And, further, it's been his intention to go to trial on this second case since the beginning. Had there been any hope in settling this case, I would have set it for a settlement conference. My client has never at any point indicated to me that he is willing to plead guilty to any of these charges.

After hearing from the parties, the court stated: "I don't see any basis upon which to go and delve any further into the State's motion to determine counsel."

¶14        At that point, the trial court directly addressed Popoca:

> THE COURT: So, Mr. Popoca, you understand that on the new charges . . . any felony convictions on the new charges would be with two historical priors?
>
> THE DEFENDANT: I do, Your Honor.
>
> THE COURT: Okay. And you're aware that the Court could give you consecutive sentences for any convictions on the new charges to the charges that I sentenced you to yesterday?
>
> THE DEFENDANT: I am aware.
>
> THE COURT: Okay. All right. And what's the highest charge he faces on the new charges?

5

[THE PROSECUTOR]: Class 2.

THE COURT: Just so you understand the potential range, a Class 2 with two historical priors gives you a range of 10 ½ — the minimum is 10 ½. That would be the supermitigated. And the maximum would be 35. And the burglary charges, the range would be from six years — that's the Class 4 with two priors — would be a minimum of six years to a maximum of 15. Got it? I mean, I know you're very intelligent, and I know you can read this chart, but I just want to make sure you understand that those are what you're —

THE DEFENDANT: I do, Your Honor.

THE COURT: I think he gets it.

¶15        Moments later, after the trial court reviewed the calendar and witness schedule with counsel, the prosecutor made a plea offer on the record:

[THE PROSECUTOR]: Also, I'm authorized to tell the defendant if he wants to plead to a 15-year sentence concurrent to any — concurrent to his other charges, the State would offer that.

THE COURT: Is that something you have heard before?

[TRIAL COUNSEL]: My client doesn't indicate that he's interested in anything like that. I would just note that I did advise him that it appears that the State is willing to settle this case.

THE COURT: It will include the other case as well, [the third trial]?

[THE PROSECUTOR]: Yes.

THE COURT: *You're not going to get any additional time*. It will all run concurrent to the sentences from yesterday.

[POPOCA]: I understand.

THE COURT: It's your choice. No? You don't want the offer?

[POPOCA]: No. No, Your Honor.

6

THE COURT: Okay.

(Emphasis added.)

¶16          At the two-day evidentiary hearing held on remand, Popoca, his mother, his trial attorney, and the trial prosecutor testified. Conflicting evidence was presented concerning trial counsel's understanding of Popoca's sentence exposure, as well as the advice he gave Popoca both before and on August 5, 2008.

¶17          Popoca testified that: (1) approximately a year before the first trial, trial counsel explained his sentence exposure, informing him that if a jury convicted him as charged, the trial court would impose, at most, a fifteen-year sentence of imprisonment, with all sentences "run together"; (2) immediately before the August 5, 2008 hearing, trial counsel told him that the trial prosecutor had presented a plea offer of fifteen years' imprisonment to resolve all remaining charges but advised him to reject it because he was likely to prevail on the first trial's appeal and would "get stuck still with 15 years"; (3) trial counsel never advised him that his sentences from the second trial could run consecutive to his sentences from the first trial but reiterated that his maximum sentence exposure for all the charges combined was fifteen years' imprisonment; (4) he did not track the aggregate sentence imposed at the first trial's sentencing hearing, and when he spoke with trial counsel by phone that evening, counsel told him that he had received an aggregate fifteen-year sentence; (5) although the trial court explained his sentence exposure for the second trial at the August 5, 2008 hearing, he did not understand the distinction between concurrent and consecutive sentences at that time; (6) he had "no time" to privately discuss the State's fifteen-year plea offer with trial counsel before rejecting the plea at the August 5, 2008 hearing; (7) he relied on trial counsel's advice to reject the plea offer, believing he was likely to prevail both on appeal from the first trial and at the second trial; (8) he would have accepted the plea offer extended by the State on August 5, 2008 if he had all the relevant information; (9) contrary to trial counsel's representations to the court, he never said he would refuse to accept a plea offer; and (10) he relied on trial counsel's advice that all his sentences would run concurrent, so he believed that his maximum sentence exposure if convicted as charged at the second trial was fifteen years' imprisonment—the same sentence put forward in the plea offer.

¶18          Trial counsel testified that: (1) he was arrested less than two months after the August 5, 2008 hearing and convicted of multiple offenses; (2) the Arizona State Bar suspended his license and he later surrendered it;

(3) he never "guaranteed" Popoca that the convictions from the first trial would be overturned on appeal; (4) Popoca rejected a twelve-year plea offer extended by the State about a year before the first trial, explaining Popoca wanted the six-year plea offer given to his codefendants; (5) he told Popoca he could "beat some of these counts" but also warned that for "a lot of these[,] you're going to get convicted"; (6) he never "guaranteed" Popoca that the trial court would impose concurrent sentences; (7) he may have told Popoca the court would likely impose only a fifteen-year sentence; (8) although he lacked any "recollection of specific conversations," he knew he discussed the sentencing ranges with Popoca at some point; (9) he used methamphetamine and crack cocaine during the time he represented Popoca; (10) around the time he represented Popoca, he repeatedly experienced periods of not sleeping for days; (11) apart from drug-related offenses, he was also convicted of perjury for providing false testimony in his own case; and (12) he never advised Popoca on the fifteen-year plea offer, explaining the prosecutor "sprung" it on him immediately before the pretrial conference and they had no time to discuss it.

¶19 The trial prosecutor testified that: (1) in March 2007, he extended Popoca a twelve and a half year plea offer to resolve all pending charges, which Popoca refused, stating he "w[ould] never plead guilty"; (2) he moved to determine counsel because he was concerned that Popoca had not been advised of the change in sentence exposure following the first trial's felony convictions; (3) after the trial court provided a *Donald* advisement—informing Popoca of the updated potential range of punishment—he put a fifteen-year plea offer on the record, to run concurrent to the sentences imposed in the first trial; (4) during his nearly thirty-year prosecutorial career, he moved to determine counsel only one other time; (5) he explained the sentence exposure to trial counsel but trial counsel denied that the trial court could impose consecutive sentences for mere "property crimes"; and (6) on August 5, 2008, he wanted the trial court to appoint independent counsel to advise Popoca.

¶20 Based on the evidence presented and its review of the relevant transcripts, the superior court dismissed Popoca's PCR petition on remand. The court found that Popoca's prior felony convictions (and self-interest in reviving the State's plea offer) undermined his credibility and that trial counsel's felony conviction for perjury undermined his credibility. "Bearing in mind the degree of credibility attributable" to both Popoca and trial counsel, and characterizing their conflicting testimony as presenting a "he-said, she-said question," the court found Popoca failed to establish that trial counsel: (1) erroneously advised him that he would prevail on the first trial's appeal or at the second trial, or (2) failed to provide him with factual

information concerning the State's evidence in the second trial "that would have made a difference with respect to [his] decision to reject the Plea Offer."

**¶21** Popoca challenges these findings, but the court had the opportunity to observe the witnesses first-hand, assess their credibility, and determine the weight to accord their testimony. We will not second-guess the court's determinations. *See State v. Hoskins*, 199 Ariz. 127, 149, ¶ 97 (2000) (explaining the superior court "is in the best position to evaluate credibility and accuracy, as well as draw inferences, weigh, and balance") (quotation and citation omitted); *State v. Sasak*, 178 Ariz. 182, 186 (App. 1993) ("It is the duty of the [superior] court to resolve any conflicts in the evidence, and where the [superior] court's ruling is based on substantial evidence, this court will affirm."); *State v. Fritz*, 157 Ariz. 139, 141 (App. 1988) ("The [superior] court is the sole arbitrator of the credibility of witnesses.").

**¶22** But unlike the aforementioned conflicting evidence, the evidence concerning trial counsel's advice to Popoca on the second trial sentence exposure did not present a "he-said, she-said question." Popoca unequivocally testified that trial counsel advised him the trial court would impose, at most, a fifteen-year sentence and trial counsel, when pressed, acknowledged that he may have advised that a fifteen-year sentence was likely the harshest sentence the trial court would impose. More importantly, the trial prosecutor recounted—both in his motion to determine counsel and at the hearing on remand—that when he discussed both the first and second trial sentence exposures with trial counsel, trial counsel "*denied*" that Popoca "could possibly be sentenced to consecutive prison terms" and lengthy sentences for mere "property crimes."

**¶23** Moreover, the record reflects that trial counsel either advised Popoca not to accept the fifteen-year plea offer immediately before the August 5, 2008 hearing (according to Popoca), or that he simply failed to offer *any* advice concerning the plea offer (according to trial counsel). And although trial counsel told the court that Popoca resolutely refused to even consider a plea offer, at the remand hearing, he acknowledged that in 2007, Popoca had hoped to settle the charges for the same six-year plea bargain that the State extended to his codefendants. Regardless, the sentencing calculus changed following Popoca's felony convictions in the first trial, so trial counsel was obligated to advise Popoca concerning the new plea offer, yet trial counsel never requested the opportunity to privately discuss the plea offer with Popoca before rejecting it.

**¶24** On this record, without question, trial counsel failed to effectively represent Popoca at the critical plea negotiation stage between the first and second trials. Indeed, trial counsel failed to: (1) accurately advise Popoca concerning his sentence exposure for the second trial—unable to reconcile himself to the reality that the trial court could impose a sentence far exceeding fifteen years' imprisonment for mere "property crimes" despite the trial prosecutor's admonitions; and (2) provide Popoca the necessary advice concerning the benefits of the State's plea offer. *See Donald*, 198 Ariz. at 410, ¶ 6 (explaining trial counsel must "properly explain and compare the terms of the plea agreement offered by the State" and the sentencing exposure should a jury find him guilty following trial).[2]

**¶25** Having found trial counsel's representation at the plea negotiation stage defective, we must determine whether this deficient performance prejudiced Popoca. Upon independent review of the August 5, 2008 hearing, the superior court found that: (1) the trial court, during its advisement colloquy, sufficiently informed Popoca of his sentence exposure should he proceed to the second trial; (2) the trial court explained that under the State's plea offer, all remaining charges would be resolved and a fifteen-year sentence would be imposed concurrent to Popoca's sentences from the first trial; and (3) Popoca affirmed his understanding that he would be sentenced as a repetitive offender for any new convictions (in the second trial), that new convictions may be stacked, and that he would receive no additional prison time under the State's plea offer.

**¶26** We likewise conclude that the trial court's advisement colloquy and explanation of the plea offer cured any prejudice. The trial court explained that Popoca's felony convictions from the first trial changed the sentencing calculus, increasing his sentence exposure. The court told Popoca that it could impose sentences for any second trial convictions consecutive to the sentences imposed for the first trial convictions. Even if Popoca did not understand the meaning and significance of the term consecutive—as he claimed at the remand hearing—the court also walked Popoca through the sentencing range for his class two felony burglary charges, placing him on notice that he could receive *a thirty-five year sentence*, a much longer sentence than the fifteen-year sentence trial counsel

---

[2] Because we conclude trial counsel provided ineffective representation during the plea negotiation stage, we need not address Popoca's contentions that the superior court: (1) failed to properly consider whether trial counsel's drug use and associated conduct compromised the effectiveness of his representation, and (2) improperly precluded evidence of trial counsel's ineffective representation during the trials.

told him reflected the upper limit. Although not discussed specifically in relation to the second trial's sentence exposure, just moments after the trial court explained Popoca's potential sentence for the second trial charges, it discussed the merits of the State's plea offer, clearly advising Popoca that if he accepted it, the court would impose concurrent sentences, and he would not receive "*any additional time.*" While defense counsel has a duty "to properly explain the relative merits of [a] plea offer in comparison with the potential sentence that [a defendant faces] if convicted of the charges," *Donald*, 198 Ariz. at 409, ¶ 1, in this case, the trial court provided the requisite explanation. Therefore, trial counsel's deficient performance did not prejudice Popoca and the superior court did not abuse its discretion by dismissing his PCR petition.

**CONCLUSION**

¶27 For the foregoing reasons, we affirm.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**: JR